State v. Morrow.

THE STATE, Respondent, v. MORROW, Appellant.*

1. The act of the general assembly of February 8, 1839 (see Sess. Acts, 1839, p. 311,) entitled "an act to amend 'an act to incorporate the town of New Franklin,' approved January 16, 1833," only repealed so much of the seventh section of the amended act as provided that the board of trustees of New Franklin should have power to raise by lottery a sum of money, not exceeding $15,000, for the construction of a *railroad* from the bank of the Missouri river to the town of New Franklin. The object of the act of 1839 was, not to overthrow the power to raise money by lottery, but to divert the application of the money, so to be raised, from the construction of a railroad to that of a macadamized road. The trustees of New Franklin were authorized, after the passage of the act of 1839, to *contract*, as provided for in the third section of the act of February 26, 1835, (Sess. Acts, 1835, p. 56,) with any person to have said lottery drawn in any part of the United States, &c.
2. The contract entered into in 1842 by the board of trustees of New Franklin with Gregory is within the protection of the provision of the constitution of the United States, that no state shall pass laws impairing the obligation of contracts.

*Appeal from St. Louis Criminal Court.*

David I. Morrow was indicted at the May term, 1855, of the St. Louis Criminal Court, under the " act for the entire abolition of lotteries" (R. C. 1845, p. 723), for unlawfully selling, and unlawfully causing to be sold, lottery tickets. Upon the plea of not guilty the jury found a special verdict, which is as follows :

" The State v. D. I. Morrow. We, the jurors empannelled in this cause, do find, as to the issue joined, that in and by an act of the general assembly of the state of Missouri entitled ' an act to incorporate the town of New Franklin,' approved January 16, 1833 (see Sess. Acts, 1833, p. 35), it was enacted as follows : [Here follows the act of incorporation at large. The seventh section thereof is as follows : ' Sec. 7. *Be it further enacted*, that the board of trustees as aforesaid shall have power and authority to pass by-laws and ordinances, to prevent and remove nuisances ; to restrain or prohibit gam-

* This case was decided at the March term, 1857, of Supreme Court.

bling; provide for licensing, regulating or restraining theatrical or other amusements within said town; to prevent or restrain the meeting of slaves; regulate and establish markets; to raise by lottery a sum of money not exceeding fifteen thousand dollars for the construction of a railroad from the bank of the Missouri river to the town of New Franklin aforesaid; to provide for the construction and completion of said road and the application of said fund to that specific object; to fix by ordinance the tolls that shall be paid for the use of said road after the same shall have been constructed and finished, or for the transportation of goods, wares and merchandise upon said road, and collect the same; to procure by contract the land upon which said road is to be constructed, and to keep the said road in repair; to cause the streets in said town of New Franklin to be cleared and kept in repair by the inhabitants thereof; to impose fines and collect them for a failure to work or perform such duty as may be imposed by ordinance; to enact by-laws for the extinguishment of fire; to regulate the enclosure of lots within said town; and the municipal regulations thereof not contradictory to the laws of the land, as they shall deem necessary.' Section 10 is as follows : ' *Be it further enacted*, that if it shall hereafter appear to the legislature of the state that the incorporation of the town of New Franklin by this act has not answered the purposes for which it was created, by a misuse of the powers hereby granted, then and in that event the general assembly of the state of Missouri shall have power and authority by law to declare the same void, and all and every power hereby granted to said corporation shall from thenceforth cease and determine.' ] And afterwards in and by another act of the general assembly of the state of Missouri, approved February 26, 1835, entitled ' an act supplementary to an act entitled an act to authorize a sum of money to be raised by lottery to be given to the Sisters of Charity in the city of St. Louis for the use of the hospital over which they now or may hereafter have the control and management,'*

---

* For this act see Sess. Acts, 1833, p. 82.

(see Sess. Acts, 1835, p. 56) it was, among other things, enacted as follows : ' *Be it enacted, &c., as follows :* § 1. The third and fourth sections, and the proviso to the second section of the act to which this is a supplement, are repealed. § 2. A majority of the commissioners of said lottery shall at all times be authorized to perform any of the duties of their appointment. § 3. The said commissioners are authorized to contract with any person to have said lottery drawn, in any part of the United States, on such terms as they shall consider most advantageous, and shall have the same privileges as to the sale of tickets in this state as heretofore, until the amount authorized in said act be raised. § 4. Said commissioners shall take sufficient bond and good security of the person with whom they contract conditioned for the payment of the money and faithful performance of the contract. § 5. The commissioners may authorize the person with whom they contract to sign the tickets and perform all other acts necessary to effect the object of the act alluded to. § 6. The board of trustees of the town of New Franklin may exercise the same powers as are conferred by the second, third, fourth and fifth sections of this act in relation to the authority they now have to raise by lottery a sum of money not exceeding fifteen thousand dollars for the construction of a railroad from the bank of the Missouri river to the town of New Franklin aforesaid. This act to take effect from and after its passage.'

" And afterwards, in and by another act of the general assembly of said state, approved February 8th, 1839, entitled an act to amend ' an act to incorporate the town of New Franklin,' approved January 16, 1823, (see Sess. Acts, 1839, p. 311,) it was, among other things, enacted as follows : ' *Be it enacted, &c.* § 1. So much of the seventh section of the act to which this is amendatory as provides that the board of trustees of New Franklin shall have power to raise by lottery a sum not exceeding fifteen thousand dollars for the construction of a railroad from the bank of the Missouri river to the town of New Franklin is hereby repealed. § 2. The board of trustees of said town are hereby authorized to apply the funds

already raised, or which shall be raised before this act shall take effect, to the construction of a macadamized road instead of a railroad, at their discretion, from the Missouri river to the town of New Franklin. § 3. The power of said board of trustees to raise money by lottery shall cease after the taking effect of this act; *provided*, that, when the said board of trustees shall have expended and applied the whole amount of funds raised at the time of the taking effect of this act, they shall report to the governor that fact, with the condition of the improvements, how the money has been applied, how far the work has been executed, and how much money, if any, will be required to complete the same; and upon such facts being reported the governor may, by proclamation, authorize the board of trustees to raise by lottery such amount as may be necessary to complete the same; provided that the same shall not exceed the sum authorized to be raised by the act to which this is an amendment. § 4. When such macadamized road shall be completed, said board of trustees shall have all the powers and privileges in relation to the same that are granted to them over the railroad mentioned in the act to which this is amendatory. This act shall take effect from the first day of March next.'

"And the jurors aforesaid, upon their oath aforesaid, do further find that the trustees in said last mentioned act named did expend and apply the whole amount of funds raised at the time of the taking effect of said act, and did report to the governor that fact, with the condition of the improvements, how the money had been applied, and how far the work had been executed, and how much money would be required to complete the same, according to the tenor and effect, true intent and meaning of said last mentioned act, which report was made in form aforesaid to the governor of the state of Missouri on the seventeenth day of November, in the year 1840; and thereupon the said governor did, on the 21st day of November, in the year last aforesaid, issue his proclamation in the words and figures following:

"'A proclamation by the governor of the state of Missouri:

Whereas the trustees of the town of New Franklin, Howard county, have this day made to me the report required by the third article of the act of the general assembly of the state of Missouri, approved February 8, 1839, entitled 'an act to amend an act to incorporate the town of 'New Franklin, approved January 16, 1836 :' Now, therefore, in pursuance of the provisions of said act, I, Lilburn W. Boggs, governor of the state of Missouri, do hereby authorize the board of trustees of said town of New Franklin to raise by lottery the sum of fifteen thousand dollars, which is the amount reported to me by said board as necessary to complete the road contemplated by the act aforesaid. In testimony whereof, I have hereunto set my hand, and cause to be affixed the great seal of the state of Missouri. Done at the City of Jefferson this 17th day of November, in the year 1840 ; of the independence of the United States the sixty-fifth ; and of this state the twenty-first. [Signed] By the governor, Lilburn W. Boggs. November 21st, 1840. James L. Minor, secretary of state.'

" And the jurors aforesaid, upon their oath aforesaid, do further find that on the first day of June, in the year 1842, articles of agreement were made and entered into by the trustees and citizens of the town of New Franklin of the first part, and Walter Gregory of the second part, in the words and figures following : ' Articles of agreement made this first day of June, 1842, between the trustees and citizens of the town of New Franklin, Missouri, of the first part, and Walter Gregory, of the city of Cincinnati, and state of Ohio, of the second part, witnesseth : That, whereas by a certain act of the legislature of the state of Missouri, approved January 16, 1833, entitled ' an act to incorporate the town of New Franklin,' power is given to the trustees of said town, in section seventh of said act, to raise the sum of fifteen thousand dollars by lottery for the construction of a railroad to said town from the bank of the Missouri river ; and whereas by a certain other act of the legislature of Missouri, approved February 8th, 1839, entitled ' an act for the benefit of the town of New Franklin' [?], the said section seven of the act of Jan-

uary 16, 1833, is declared repealed ; but in section third of
the act of 1839 the governor of the state of Missouri is au-
thorized to issue his proclamation upon statement of facts
being laid before him by said trustees of the moneys received
and paid out by them on account of said act of 1833, giving
power to said trustees to raise by lottery the amount required
to complete the works authorized by said act of 1839, as per
section second of said act ; and whereas the governor of Mis-
souri did issue his proclamation, dated November 21st, 1840,
in the words following, to-wit : [here follows proclamation as
above] ; and whereas said parties of the first part, under the
powers granted them by said proclamation, did contract with
one Daniel Gray and Joseph F. Eichholtz to raise for them,
the said trustees, the said sum of fifteen thousand dollars,
which agreement has been subsequently assigned to the party
of the second part by the said Daniel Gray and Joseph F.
Eichholtz ; and all the parties aforesaid being desirous to
make a more perfect agreement which do hereby condition
[*sic*] that the party of the second part [?] shall and he does
hereby surrender to him all their claims by virtue of said
agreement, which is hereby declared by the respective parties
revoked and of no effect from this date, provided that all
moneys paid to said trustees by said Gray and Eichholtz, on
account of said agreement, shall be credited to the party of
the second part and acknowledged as a part of the sum of
fifteen thousand dollars authorized to be raised by them, as
paid by him under the present contract as follows : [&c.]
Now this indenture witnesseth, that the said parties of the
first part, for and in consideration of the sum of money here-
inafter mentioned to be paid by the party of the second part,
do by these presents agree to sell, dispose, transfer and set
over to the said party of the second part the said lottery and
all right to control the same, and appoint him the sole man-
ager and conductor of the said lottery or lotteries for the ben-
efit of the town of New Franklin, under the powers above
recited, to draw such scheme or schemes as from time to
time he shall think proper, or to decide any class or classes

by the drawing of any other lottery or lotteries within the United States as he may deem proper, or he may have the power at any time he thinks proper to consolidate said lottery with any other lottery of which he may be the manager. And the said party of the second part does hereby agree to assume the management of said lottery for the purpose of raising the sum of fifteen thousand dollars as aforesaid from and after the first day of June, 1842, and to pay toward the said amount in instalments as follows, viz: $250 on the first day of January, 1843; $250 on the first day of June, 1843, and so on, paying the said sum of $250 semi-annually until the aforesaid sum of $15,000 is fully raised to the said parties of the first part, or to any person authorized by them to recover the same, provided that the sum of $1000, heretofore raised by said parties of the first part of Gray and Eichholtz, and $100 received from Jacob Hawthorn previous to this agreement, shall be considered as payment in order as made on the above instalment by said party of the second part; and the said party of the second part does further agree to pay all expenses and costs and charges attending the management of said lottery, and to sustain all hazards, risks, losses and expenses whatever, and shall pay all prizes drawn or decided in said lottery, less the discount of twenty per cent., if demanded within twelve months after the drawing of any class thereof; and the respective parties hereby agree that if the said party of the second part does not pay the respective instalments as aforesaid within forty days after each shall become due, then the parties of the first part may by due notice declare this contract null and void, and require the delivery of the same forthwith from the party of the second part, who shall not have the power to draw any more classes of lotteries under this contract after the issuing and service of said notice. And the respective parties further agree that the party of the second part shall not be bound by this agreement in the event of any interference by the legislature, judiciary or any other power, so that he can not conduct the business; in which case payments to be made by him to time of such interfe-

rence only ; and the said party of the second part shall have power under this contract to assign the same to any competent person, or to abandon it by giving ninety days' notice and paying up all instalments and charges to date of said assignment or abandonment. In witness whereof the respective parties have hereunto set their hands and seals this first day of June, 1842. [Signed] James H. Benson, chairman, (seal,) Robert Coleman (seal), J. W. Redman (seal), H. Shugert (seal), Walter Gregory (seal). Attest: J. Hawthorne' ; which agreement, on the day of the date thereof, was signed and sealed by the trustees of the town of New Franklain and the said Walter Gregory, and was afterwards on the eighth day of June, in the year 1842, accepted and approved by the board of trustees at a meeting of said board on the day and year last aforesaid.

"And the jurors aforesaid do further find that the said Walter Gregory did execute and deliver to the said board of trustees a bond in the sum of $30,000 with sufficient security conditioned for the payment of the money and the faithful performance of the contract, which bond so made and executed was then and there approved, received and accepted by the said board of trustees. And the jurors aforesaid upon, &c., do further find that the said Walter Gregory, having taken upon himself the management of the said lottery under and by virtue of the contract aforesaid, did devise a scheme of said lottery to be drawn, and did cause tickets to be prepared in said scheme for sale, and constitute and appoint David I. Morrow agent to sell and dispose of said tickets as such agent. And the jurors, upon, &c., do find that the said David I. Morrow, as agent of the said Walther Gregory in that behalf duly authorized, did on the first day of January, in the year of our Lord 1855, sell and deliver one ticket in the said scheme so devised and prepared by the said Walter Gregory as charged in the indictment; and that at the time of the said sale there had not been raised by lottery for the purposes aforesaid, under and by virtue of said acts of assembly, proclamation and contracts, the sum of money

thereby authorized to be raised. But whether upon the facts aforesaid, in form aforesaid found, the said David I. Morrow is guilty in manner and form as charged in the indictment, the jurors aforesaid are not advised, and pray the judgment of the court herein ; and if the court shall be of opinion upon the facts aforesaid that the defendant is guilty in manner and form as charged, the jurors aforesaid do say that he is guilty, and assess the fine at the sum of $1000 ; but if the court shall be of opinion upon the facts aforesaid that the defendant is not guilty, the jurors aforesaid do say that he is not guilty as charged in the indictment."

Upon motion of the circuit attorney judgment was rendered against the defendant upon this special verdict. The defendant moved the court to set aside this judgment.

*U. Wright*, for appellant.

I. The only question arising upon the record in this case has been twice decided by this court. (State v. Hawthorn, 9 Mo. 389 ; Morrow v. The State, 12 Mo. 279.) In the latter case the parties were the *same* now before the court, and the facts identical with those presented by the present record.

II. If the question were yet to be decided on general principles and authority, the decision can be but one way. (State of Delaware v. Phalen & Pain, 3 Harring. 752.)

*H. A. Clover*, (circuit attorney,) for the State.

I. The facts of this case do not bring it within the authority of the case of the State v. Hawthorn, 9 Mo. 390, and the authority of that case is not questioned. The contract with Gregory was null and void. By the act of 1839 the seventh section of the act of 1833 was repealed as far as it provided that the board of trustees of New Franklin should have power to raise by lottery a sum of money not exceeding $15,000 for the construction of a railroad from the bank of the Missouri river to the town of New Franklin. With the destruction of the principal the incident fell. At this time there were no vested rights in third persons which could not be impaired by

the act of the legislature then in force declaring that all lotteries, after the 1st day of January, 1836, should be utterly and entirely abolished. The legislature might repeal the act of 1833 without violating any constitutional provision. The power to make contracts created by the act of 1835 had not been executed at the time of the passage of the act of 1839. By the act of 1839 the power given by the act of 1833 to raise money by lottery, and the incident to that power to contract with other parties to have said lottery drawn in the act of 1835, was repealed and a new authority granted. This was the state of legislation at the date of the contract with Gregory. The act of 1833, so far as the power to raise money by lottery, is expressly repealed, and with it fell the incidental power given by the act of 1835. The case of Hawthorn is essentially different from the case at bar. In that case a contract was made at a time when the commissioners might lawfully contract, and being executed could not be impaired by any legislation enacted. By the act of 1839 the board of trustees of New Franklin, under the proclamation of the governor, were authorized to raise by lottery $15,000, but they could not delegate their power to another as by the act of 1835. All authority to raise any money by lottery dates from 1839, all previously existing powers having been repealed. No power to delegate a power arising in 1839 can flow from an act passed in 1835. The power to delegate does not arise from the subject matter of the grant. The proclamation follows the statute authority. It authorizes the board of trustees to raise the $15,000 by lottery, not to farm by contract. Assuming that the trustees may contract, for what may they contract? What is there to prevent the trustees from agreeing to receive one dollar per year and thus legalize the lottery for a period of fifteen thousand years? The acts should be construed strictly. Here the whole franchise is transferred, not, as in Hawthorn's case, the right to the sole management. I have, merely for the purpose of argument, assumed the power in the board to contract with other parties. I deny their right so to do. They have power to raise

by lottery a sum of money, but this does not give them the privilege of raising the money in any other way than by lottery ; certainly not by selling the right.

SCOTT, Judge, delivered the opinion of the court.

The act, approved February 8th, 1839, entitled " An act to amend ' An act to incorporate the town of New Franklin,' approved January 16th, 1833," only repeals so much of the seventh section of the amended act as provides that the board of trustees of New Franklin shall have power to raise by lottery a sum not exceeding fifteen thousand dollars for the construction of a railroad from the bank of the Missouri river to the town of New Franklin. (Sess. Acts, 1839, p. 311.) The repeal of one clause of a section specifically raises a clear implication that nothing else was intended. The act of 1839 is by its title and its terms an amendatory one. It makes no reference whatever to the act of February 26, 1835, (2 Terr. Laws, p. 476,) which authorizes the board of trustees of the town of New Franklin to contract with any person to have said lottery drawn in any part of the United States on such terms as they shall consider most advantageous. When therefore the act of 1839 authorizes the raising of $15,000 by lottery, it must be intended that it was to be done in the manner prescribed by the laws then in force in relation to the subject. The object of the act of 1839 was only to divert the application of the sum authorized to be raised, to cause to be made a macadamized road instead of a railroad. The reason which existed for authorizing a contract to have the lottery drawn in any part of the United States in relation to the sum to be raised under one act was equally applicable to the sum to be raised under the other. The general assembly in 1839, looking back at the legislation on the subject of the New Franklin lottery, seems to have taken special care only to change the purpose to which the money, authorized to be raised, was to be applied. This particular designation of the object to be accomplished shows that nothing else was designed. A repeal of statutes by implication

10—VOL. XXVI.

is not favored in the law. These laws all being in relation to the same subject, in *pari materia*, must be so construed as to make them all stand.

This case then falls within the principle of that of the case of The State v. Hawthorn, 9 Mo. 389. The terms employed in transferring the lottery of New Franklin are the same as those used in the contract in the case of Hawthorn just mentioned, and no point was made on them in that case. The judgment there stands on the assumption that the contract was a legal one.

The general assembly having by a late law ratified the contract made by the trustees for the disposition of the lottery, this can not be a matter of much importance. The other judges concurring, the judgment will be reversed.