THE STATE *ex rel.* THE ATTORNEY GENERAL v. MILLER *et al.,* *Appellants.*

1. **Contracts of Public Corporations**: RATIFICATION OF, BY STATE. The General Assembly, by an act passed in December, 1855, enacted, "that all contracts made by the trustees of the town of New Franklin, for the purpose of raising the amount authorized in the act of incorporation, be, and the same are hereby declared to be legal, and may be carried out according to the true intent and meaning of the parties thereto." At the time of the passage of this act, but two contracts had been made by the trustees, one in 1842, the other in 1849; and long prior to its passage, the contract of 1842 had been declared valid by the judgment of this court; *Held,* that the State,

by the act, intended to remove doubts as to the validity of the contract made by the trustees in 1849, and thereby ratified the same ; and that a subsequent ratification by the State of a contract made by one of its own agencies is equivalent to a previous authorization.

2. ———: ———: VESTED RIGHTS UNDER. Public corporations are the auxiliaries of the State in municipal government, and neither their existence nor their privileges, rest upon anything like a contract between them and the legislature; but, when such a corporation, by authority of the State, contracts with a third person, whereby rights become vested in such person, they cannot be divested by the State; such a contract becomes, *pro hac vice*, the contract of the State, and if imperfectly made, can be validated by it, and, when so validated, cannot be violated by the State.

3. ———: MODIFICATION OF, WHEN VALIDATED BY LEGISLATIVE ACT: SUCH ACT NOT OBNOXIOUS AS A RETROSPECTIVE LAW. The act of 1855 is not obnoxious to the constitutional objection that it is retrospective in its operations ; the State, as one of the contracting parties, had the same right to consent to the modification of the contract made in 1849, as it had to confer original authority on the town of New Franklin through its trustees to enter into the contract of 1842.

4. ———: VESTED RIGHTS UNDER : WHEN THEY CANNOT BE DIVESTED BY QUO WARRANTO. When the State, through the agency of a public corporation, makes a contract with a third person, and such contract imposes no obligation upon such person to look to the application of the money to be paid by him under such contract, it cannot, by a proceeding by *quo warranto* forfeit and take away the right of the assignees of such person, because such corporation does not apply the funds realized to the object for which they were intended.

*Appeal from St. Louis Court of Appeals.*

*James O. Broadhead,* for appellant.

1. The creation of the town of New Franklin was the creation of a public corporation, called the town of New Franklin, but the Legislature authorized the town of New Franklin (which was an agency of the State) to make a contract with an individual, and so soon as that contract is made, there is a franchise, which the State, through its agent, has made, and which it cannot interfere with. I say that the Legislature can abolish the town of New Franklin to-day if it sees fit. It could have done it twenty years ago. It could have blotted it out of existence as a corpo-

ration or municipality if it had chosen at any time, either with or without cause. It needed no cause whatever to blot out of existence the town of New Franklin, except that the Legislature should declare that the public good required it; but if the State has used the town of New Franklin as an agent by which a contract has been made with certain individuals in this State, that is a contract made by the State, which no power in this land can interfere with.

Is it a contract? Our Supreme Court has so held and I call your honor's attention to the fact that they have decided that it is a contract, and an inviolable contract—a contract protected by that provision of the Federal Constitution which says that no law shall be passed impairing the obligation of any contract—a contract which Judge NAPTON, in delivering the opinion of the Supreme Court, says the State can no more interfere with than it can interfere with a contract between individuals.

2. The making of the contract does not make the contracting party any part of the corporation of the town of New Franklin. They are authorized to make contracts with him just as a city may be authorized to make a contract with a man in St. Louis county for any purpose whatever; and you might as well say that the person with whom that contract is made is responsible for the act of the corporation of the city of St. Louis, as to say that the man who contracted under this authority of the Legislature to sell lottery tickets to raise money for the town of New Franklin, is responsible for a dereliction of duty on the part of the trustees of that town. It is a most monstrous proposition for the State to advance here in a court of justice.

3. If we should admit that the contract of 1849 was in violation of the law, as it stood at that time, is there any doubt about the power of the Legislature to pass the act of 1855, declaring valid all contracts made prior to that date?

*Barton County v. Walser*, 47 Mo. 189; *Steines v: Franklin County*, 48 Mo. 167.

4. It is claimed by the Attorney-General that the passage of this act was the exercise of judicial power on the part of the Legislature, but this would be equivalent to saying that the State cannot, through. the Legislature, make a contract. He may as well say that an act of the Legislature providing for leasing the penitentiary or modifying the lease is a judicial act; the true and well settled doctrine on this subject is that the Legislature cannot pass a law determining the rights between individuals, but so far as the State is concerned it may make or modify its own contracts with individuals, and this contract of 1849 was a modification of the contract of 1842 between the State and Gregory, made by the State's own agents and confirmed by the act of 1855.

Now, there is really the gist of this whole case. The gentlemen have confounded the two ideas. They have undertaken to establish this proposition, that Gregory is mixed up with the franchise, that Gregory and the trustees are one, that this is a grant to Gregory and the trustees. Why, that is not so. The State simply authorizes these trustees, as its own agent, to make a contract, and through its agents it has made this contract. The State has made it, the Legislature has made it, and they can no more impair a contract made by themselves than they can pass a law impairing a contract between individuals. *Gelpcke v. Dubuque,* 1 Wall. 175.

5. This court has decided, time and again, that a law passed, and in force on the adoption of the constitution, although that law, in its spirit and essence, is in violation of. some new provision adopted by the New Constitution, nevertheless the Legislature afterwards may amend that law, extend its powers and give it new force and efficacy, in spite of the inhibitions of the constitution. *State ex rel. v. Cape Girardeau, &c.*, 48 Mo. 471.

6. There is all the difference in the world between a

private and a public corporation. The grant of a charter to a private corporation was held in the Dartmouth College case, and has always been so held since, as a contract which could not be violated, a contract made between a Legislature which grants a charter and the person who is to enjoy its benefits. But a county or town is not an independent, individual person having right of property, with which the State cannot meddle, but is a mere local agency employed by the State for the purpose of municipal government, and liable to have its very existence determined and ended, if the State shall so order. *Hamilton v. St. Louis County,* 15 Mo. 3; *Barton County v. Walser,* 47 Mo. 189; *People v. Power,* 25 Ill. 190; *East Hartford v. Hartford Bridge Co.,* 10 Howard 533; *Dunklin Co. v. District Court,* 23 Mo. 449; *Reardon v. St. Louis County,* 36 Mo. 555; *Han. & St. Jo. R. R. Co. v. Marion County,* 36 Mo. 294.

*D. T. Jewett* and *A. W. Mead* for appellant.

1. It has been repeatedly decided by this court that this is a contract simply. *State v. Hawthorn,* 9 Mo. 389; *Morrow v. State,* 12 Mo. 279; *State v. Morrow,* 26 Mo. 131; *State v. Miller,* 50 Mo. 129.

2. But suppose it is a franchise? Then it is an independent one. It has no connection with the spending of the money. The 10th section of the act of 1833 is set forth in the information, as authorizing the Legislature to repeal all the powers granted by that act. That is of no importance. The Legislature could, without that section, at any time have lawfully repealed all the powers granted by the act of 1833, as that was a mere municipal franchise or charter, and there was no contract in it. But after the act of 1835, and a contract had been made under it, then it was, and is, past the power of the Legislature or convention to annul that contract, as the Supreme Court of this State has four times decided. Some of the judges below could not seem to see any distinction between a municipal charter or franchise, that could be repealed, and a contract

made by authority of the State that could not be annulled or repealed. The Gregory agreement is a contract, and cannot be engrafted upon the municipal franchise so as to become repealable at the pleasure of the Legislature, but stands independently, and cannot be broken by one party to it against the will of the other.

But the charter granted to the town of New Franklin is a municipal charter, so far as the town is concerned—as many other privileges are granted to that town by the act of 1833 besides the power to raise money by a lottery.

If the contract can be destroyed by the failure of the trustees to run the municipal franchise right, then *e converso*, the franchise can be destroyed by failure to fulfill the contract!

But if this Gregory contract is called and treated as a franchise, we say it is an independent one, and can only be forfeited for malfeasance under it, and that it would stand, though the municipal franchise might be taken away or forfeited, or other franchises in the same charter. This is expressly laid down as settled law in Tomlin's Law Dictionary, title *quo warranto*, p. 283, 2d column, and Tancred, *quo warranto*, p. 257.

*J. L. Smith*, Attorney-General, *Frank J. Bowman* and *C. P. Ellerbe* for respondent.

1. It is well settled that it is a tacit condition of a grant of incorporation, that the grantee shall live up to the end or design for which it was granted. 16 Maine 224; *People v. Bank of Niagara*, 6 Cowen 196, 211, 217; 4 Wheat. 558–9; 2 Mo. 169; 5 Mass. 230; 9 Wend. 351; 9 Cranch 43, 51; 2 Mo. 169.

2. Long continued and willful neglect on the part of a corporation to comply with the requirements of its charter, and carry into effect the purposes for which it was created, is cause of forfeiture. 6 Iredell 460, 456; 23 Wend.

235; 5 Iredell 309; 23 Wend, 254, 537; 4 Cushing 60, 62; 20 Penn. 185.

3.   A corporation, by the terms and nature of its existence, is subject to surrender, by a surrender of its corporate franchises, and by a forfeiture of them for willful misuser and non-user.   8 Peters 281; 11 Alabama 472; 19 Maryland 239; 16 Mass. 102.

4.   The plank road franchise was first granted to the trustees of New Franklin, with its lottery attachment, and was afterwards transferred, as is claimed by respondents, to one Gregory and his assigns—under these several assignments defendants now claim.   In the original contract with the State, the terms upon which the lottery franchise might be enjoyed, are plainly and unequivocally expressed, viz: To build and keep in repair a plank road, and to use the money raised, for that purpose only.   It will be observed that this is the positive provision of the act of 1855, under which title is now claimed.   An assignee takes no better or greater title than his assignor possessed—the building of the road was the condition upon which the franchise could alone be enjoyed by the trustees of the town of New Franklin, and they could not convey the franchise divested of its obligations—the obligations have been violated, and the defendants are no longer entitled to enjoy the questionable privileges of this peculiar franchise.

5.   When the State grants a franchise for a certain purpose, the purpose contemplated must be strictly complied with, or the parties lose the right to enjoy the privileges of the franchise.   *Att'y Gen. v. P. & R. R. R. Co.*, 6 Iredell 456; *Att'y Gen. v. Washington and & B. Turnpike Road*, 19 Md. 239.

6.   We insist that the contract of 1842 is utterly null and void, because the act of 1833, only gave the trustees themselves power to draw the lottery, and it was not until the act of 1835 was passed, that they had the power vested in them, to contract for the drawing; and it was not until the contract of 1842 between Gregory and the trustees was

executed, that the trustees of New Franklin exercised their right under the act of 1835, allowing them to contract for the drawing ; and in the intervening space of time between. the act of 1835 and the contract of 1842, there was a very stringent lottery law passed by the Legislature of 1836, prohibiting lotteries. Then we claim that as the right given the trustees of New Franklin by the act of 1835, to contract as before stated, was not exercised till 1842, the broad and stringent lottery act of 1836 repealed the lottery franchise under the acts of 1833 and 1835, and that the execution of the contract of 1842 being subsequent to the act of 1836, is null and void; that the trustees of New Franklin were not in the same legal condition after the broad and stringent lottery act of 1836 was passed, as they were before it was so passed. See Revised Code 1835, page 398.

7. We further claim, that the pretended contract of 1849, extending the lottery franchise by postponing the time of payment, is void for several reasons :

1st. Because it is a *nudum pactum*, without consideration. The lottery manager, Gregory, was required, by the contract of 1842, to pay $500 per year in semi-annual payments, and this extension of time, upon the mere payment of $500, when he should have paid the $500 regularly from year to year, is no consideration, for it did not confer any additional benefit on the trustees, but was a loss to them, of the various sums that should have been paid during the extension of time, and it was a benefit to Gregory, and there should have been a new consideration offered on the part of Gregory, and accepted, to make valid the contract of 1849.

2nd. It is void, because it refers to a lottery supposed to exist by previous contract, and is also in itself a lottery contract, and the statutes of 1836 and 1842 prohibited all lotteries in this State. Therefore said contract of 1849, having been executed subsequent to the broad, stringent

lottery Acts of 1836, 1842 and 1845, is null and void. (See Acts of 1836, 1842, and Revised Code, of 1845.)

8. It appears that there was an act passed December 6, 1855, which attempts to legalize the former contracts of 1842 and 1849, between the trustees of Gregory, under whom defendants claim. We insist that it does not, and cannot, because the contract of 1842 being void, as just stated, as also the contract of 1849, by reason of the stringent acts of 1836, 1842 and 1845 prohibiting lotteries, this statute attempts to legalize contracts void and illegal, and infuse life and vigor into them when they were void at the time of their creation, and presumes to legislate upon a subject-matter that has an illegal existence, and we insist that a Legislature cannot legalize a contract originally void; nor make or alter contracts for parties. The act of December 6, 1855, does not validate the contracts, unless it abolishes the prohibitory lottery acts of 1836, 1842 and 1845. It cannot be presumed that the Legislature intended to repeal the act of the 8th of January, 1845, which was a general law and remained in force until the 8th of December, 1855, when the same Legislature passed an act prohibiting all drawing of lotteries and sales of tickets only two days after the supposed legalizing act of December 6, 1855, was passed.

9. Said act of 1855, acts retrospectively, by attempting, in the face of the stringent lottery act of 1842, to go behind and disregard said act, and validate a contract that has an illegal existence, and which was void at the time of its creation, by virtue of said act of 1842. The constitution of 1845 prohibits, in direct terms, the very thing that the Legislature of 1855 has done, to-wit: the passage of laws acting retrospectively. See Constitution of 1845. As before stated, the statute of 1842 is a general statute, and this act of 1855 is simply a ratification of a contract, and is a special act of legislation, and cannot in any manner affect the broad language and meaning of said act of 1842.

10. The Legislature of 1855 had no power or right to decide what was or what was not legal, that power is vested in the judiciary department only. Cooley Const. Lim., §§ 91, 92; Dwarris on Stat., p. 69, 2d note, p. 365. Upon general principles, the courts can declare an act void and unconstitutional, if it usurps the functions of another department. Cooley Const. Lim., p. 175; 27 Penn. 456; *State ex rel. Pittman v. Adams*, 44 Mo. 572; 5 Gray 100.

11. The act of 1870, by which it is attempted to restore the already forfeited rights of these defendants, and to protect and aid this lottery scheme, by authorizing a macadamized instead of a plank road, was utterly null and void; for by the constitution of 1865, it was provided that " The General Assembly shall never authorize any lottery; nor shall the sale of lottery tickets be allowed; nor shall any lottery heretofore authorized be permitted to be drawn, or tickets therein be sold." See article 4, section 28, of the constitution of 1865.

12. The lottery was most positively prohibited by the constitutional provisions of 1865, before stated, and the constitutional prohibition of 1875, which in clear and distinct language says. " The General Assembly shall have no power to authorize lotteries or gift enterprises for any purpose, and shall pass laws to prohibit the sale of lottery or gift enterprise tickets, in any scheme in the nature of a lottery in this State; and all act or parts of acts, heretofore passed by the Legislature of this State, authorizing a lottery or lotteries, and all acts amendatory thereof, or supplemental thereto are hereby avoided." See section 10, of article 14, Constitution of 1875. The rights of defendants should be strictly construed, as the privileges claimed by them are in direct violation of the Constitution of the State and the laws against gambling; public policy requires the suppression of so monstrous an evil, and has made it necessary that this grand speculative scheme, which seeks, in defiance of the moral sense of the community, to maintain itself in our midst, should be suppressed; and the able

jurists composing the Constitutional Convention whose work has been ratified with such remarkable unanimity, determined to cut up by the roots this growing evil, by declaring that all laws in any manner sanctioning it should be avoided, the State thus assuming the responsibility for all damage, if damage there be. This provision was necessary as a proper police regulation for the State—public policy demanded it—the people in their sovereign capacity had the right to so declare, and have exercised that right.

NORTON, J.—This is a proceeding in the nature of *quo warranto* exhibited by the Attorney-General on behalf of the State, to the St. Louis circuit court; in which it is alleged that defendants, without warrant, and in violation of law were engaged in selling lottery tickets under a pretended franchise, and praying that they be required to appear and show by what authority they were acting.

Defendants appeared and alleged in their answer that by virtue of a contract entered into on the 1st of June, 1842, by one Gregory with the trustees of the town of New Franklin, and a modification thereof made on the 11th of April, 1849, as ratified by an act of the General Assembly, passed in December, 1855, they were fully authorized to enjoy the privilege of selling tickets and conducting a lottery in the State till the year 1877, they having acquired by purchase and assignment from the representatives of said Gregory all the rights accruing to him under said contracts. It was also averred that the General Assembly passed an act in 1833, incorporating the town of New Franklin, in which it was provided that it might, through its trustees, raise by lottery the sum of $15,000, for the purpose of building a railroad from said town to the Missouri river; that in 1835 another act was passed authorizing the said trustees to contract with any person to have said lottery drawn, in any part of the United States, on such terms as they might consider the most advantageous; also another act,

passed in 1839, whereby the trustees were empowered to apply the proceeds of said lottery in constructing a macadamized, instead of a railroad; that it was also provided by this act that the Governor might, by proclamation, authorize the trustees to raise by lottery a sum not exceeding $15,000 to complete the work; that under a proclamation thereafter issued by the Governor, giving the requisite authority, the said trustees, on the 1st of June, 1842, made a contract with one Walter Gregory, by which they sold and transferred to him the said lottery privilege and all right to control the same, and appointed him the sole manager thereof, in consideration of which the said Gregory agreed to assume the management of said lottery and to pay the trustees, in installments, $250 on the first day of January, 1843, $250 on the first day of June, 1843, and so on, paying the sum of $250 semi-annually till the said sum of $15,000 was fully paid; that the said Gregory further agreed to pay all expenses, costs and charges growing out of the management of said lottery, to sustain all hazards, risks and losses, and pay all prizes drawn or decided in said lottery; that this contract was modified by another made on the 11th of April, 1849, between said Gregory and the board of trustees, whereby the said Gregory, on the payment of $500, was released from all payments under the contract of June 1, 1842, till the 15th of June, 1851, when the semi-annual payments of $250 on the said contract were then to begin and continue until the additional sum of $13,400 was fully paid; that the General Assembly, by an act passed in December, 1855, (Sess. Acts 1855, p. 467,) among other things, provided "that all contracts made by the said trustees for the purpose of raising the amount of money authorized to be raised by the said act of incorporation, and the acts amendatory thereof, for the purpose of constructing a rail or macadamized road from the bank of the river to said town, be, and the same are hereby declared to be legal, and may be carried out ac-

340 SUPREME COURT OF MISSOURI,

The State ex rel. The Attorney General v. Miller.

cording to the true intent and meaning of the parties thereto."

Upon a trial in the circuit court, judgment of ouster was rendered against the defendants, which, on appeal to the St. Louis Court of Appeals, was affirmed, from which defendants have appealed to this court.

It is contended by respondents that the judgment is rightful :

1st. Because there was not in being any valid contract conferring upon defendants the right to conduct a lottery.

2nd. Because the privilege of conducting a lottery conferred by the act of 1833 had been forfeited by misuser and a misapplication by the trustees of the town of New Franklin of the moneys derived from it.

Anterior to the adoption of the constitution of 1865, there was nothing in the organic law prohibiting the Legislature from establishing lotteries. Until then, they had the right to pass laws authorizing or forbidding the sale of lottery tickets. Under the constitution of 1820, the General Assembly had the power to authorize the town of New Franklin, through its trustees, to raise money by means of a lottery, and this we understand to be conceded. Nor is it denied that the act of 1835, empowering the said trustees to contract with any other person for the drawing and management of the lottery was a legitimate exercise of legislative power; nor is the validity of the contract entered into by the trustees with Gregory in June, 1842, questioned, its binding force having been sanctioned by this court heretofore in the cases of *Morrow v. State*, 12 Mo. 279; *State v. Morrow*, 26 Mo. 131, and *State v. Hawthorn*, 9 Mo. 389. It is, however, claimed by respondent that under the contract of 1842, the defendants, as assignees of Gregory, had no right to operate a lottery after the year 1870, as at that time the whole sum of $15,000 authorized by this means would have been realized. It is insisted on the other hand by the defendants that the contract of 1842

was so modified by the contract of 1849 as to continue the time for conducting the lottery till the year 1877, and that if the contract of 1849 was tainted with any infirmity it was cured by the confirmatory and validating act of December, 1855.

The question then presents itself, Were the defendants engaged in selling lottery tickets under any valid contract made with the State or its agencies, when this proceeding was instituted? It is not an open question that, under the contract of 1842, the defendants, as the assignees of Gregory, could rightfully manage and carry on a lottery till 1870. The cases above cited put this question to rest. Was the contract of 1842 so modified by the contract of 1849 as to continue this right till 1877? It is insisted by respondent that the contract of 1849 had no such effect, because it extended the time for conducting the lottery from five to seven years, in violation of the acts of 1842 and 1845, which prohibited the sale of lottery tickets in the State, and was therefore void. This argument, if sound, would prove that the contract of 1842 was also void, because the Legislature in 1836 passed an act prohibiting the sale of lottery tickets, which was in full force when the contract of 1842 was entered into. This court pronounced that contract valid, notwithstanding the existence of the act of 1836. We are not to presume that the court overlooked that act when the validity of that contract was the direct question before them in two cases.

It is also said that the contract of 1849 is void because it is not supported by any consideration. Whether this be

1. CONTRACTS OF PUBLIC CORPORATIONS: ratification of, by State.

so or not can make no difference, if, by the act of 1855, it was validated—ratified by the State speaking through the General Assembly. It is declared in the acts of 1855, p. 467, "that all contracts made by the trustees of the town of New Franklin for the purpose of raising the amount authorized in the act of incorporation * * * be, and the same are hereby declared to be legal and may be carried out according

to the true intent and meaning of the parties thereto." The words of this act are unambiguous. At the time of its passage but two contracts had been made by the trustees—one in 1842, the other in 1849. Besides these no others were in existence to which the language of the act could be applied. The Legislature could not have referred alone to the contract of 1842, because they used the word " contracts," which embraced not only that but all others. The contract of 1842 needed no legislative ratification to support it, because long prior thereto it had been upheld by the judgment of this court. The contract of 1849 had not at that time undergone judicial scrutiny, nor had its legality been passed upon—and the presumption is that the General Assembly, because of the existence of doubts as to its validity, intended to remove them and make that clear which before was questionable. We are unacquainted with any principle of construction which would justify us in applying the act of 1855 to the contract of 1842, which needed no aid or support, to the exclusion of that of 1849, which, the argument of respondent tends to show, did require confirmation to give it force and effect. Both are embraced in the terms of the act, and we cannot do violence to it by giving to the words it contains a more restricted meaning than they import. It is settled that a subsequent ratification by the State of a contract made by one of its own agencies is equivalent to a previous authorization. (*Steines v. Franklin Co., supra.*)

The contract of 1849 was so made because by the act of 1833 the town of New Franklin became a public as con-

2. ——: ——: tradistinguished from a private corporation;
vested rights un-
der.          and such public corporations are called into being at the pleasure of the State, and neither the charter nor act of incorporation is in any sense a contract between the State and the corporation. The same voice which speaks them into existence may speak them out. (2 Dill. Mu. Cor., Sec. 30.) Such corporations are the auxiliaries of the government in the important business of municipal

rule and cannot have the least pretension to sustain their privilege or their existence upon anything like a contract between them and the Legislature. (Ang. and Ames Cor. Sec. 31.) When the State, however, does create such agency, and through it contracts with a third person, whereby rights become vested in such person, it is then beyond its power to divest them; for, such contract is *pro hac vice* the contract of the State, the obligation of which, it cannot impair without trampling under foot that provision of the constitution, which declares that no State shall pass any law impairing the obligation of a contract; and, if such agency make a contract with a third person touching a subject in reference to which the State has authorized it to contract, and such contract is imperfectly made, it is within the power of the State to validate it.

If, therefore, the contract of 1849 was not, as is contended, in conformity to law, the act of 1855 declared it to be legal, and that it should be carried out "according to the intent and meaning of the parties thereto."

If the General Assembly in the act of 1855, instead of referring in general terms to all contracts made by the trustees of the town of New Franklin, had incorporated in the act the contracts of 1842 and 1849, in the very words in which they were expressed, they would not have been rendered more valid than they are under the act which includes both of them by the reference therein contained. Both stand upon the same footing and are to be regarded as the contracts of the State, which it, no more than an individual, can violate.

It is also urged that the act of 1855 is obnoxious to that provision of the constitution which declares that the Legislature shall not pass any law retrospective in its operation. The cases to which we have been cited in support of this view are cases in which the Legislature undertook to make acts valid between individuals which were void in their inception, as, for instance, that a deed executed by A

3. ——: modification of, when validated by legislative act: such act not obnoxious as a retrospective law.

to B, though void when made, should be held valid; or that a deed made by an insane person should be legal and binding. The principle decided in such cases has no application here, for the reason that the State, as one of the contracting parties, had the same right to consent to the modification of the contract made in 1849, as it had to confer original authority on the town of New Franklin, through its trustees, to enter into the contract of 1842. (*H. & St. Jo. R. R. Co. v. Marion Co.*, 36 Mo. 303 ; *Barton County v. Walser*, 47 Mo. 189 ; *Steines v. Franklin Co.*, 48 Mo. 167.)

It is further urged that because of the misuser of the money paid to the trustees under this contract, the assignees of Gregory have lost all rights acquired by them, and that the State can claim a forfeiture of the privilege granted on that account.

4. ———: vested rights, under: when they cannot be divested by quo warranto.

The evidence in the case clearly shows that the trustees did not apply the funds realized to the object for which they were intended, and while this breach of duty might have been addressed to the Legislature as a cogent reason for the withdrawal of the bounty bestowed, or the total destruction of the town of New Franklin as a municipality, it does not follow that the State through a proceeding in *quo warranto* can for such cause forfeit and take away the right acquired by the assignees of the Gregory contract. So long as the power conferred by the act of 1835 upon the trustees to contract with other persons for drawing and managing said lottery remained unexecuted by them, the State, through its Legislature, could have taken from the town of New Franklin the right to raise money in that way, such right being a mere bounty, subject to recall or repeal without such repealing law being obnoxious to the prohibition against the passage of a law impairing the obligation of contracts. When, however, this power is executed and a contract concluded, whereby a third person acquires the right to conduct and manage a lottery, another and different question is presented, and the rights thus acquired become vested by the act of the

OCTOBER TERM, 1877. 345

The State ex rel. The Attorney General v. Miller.

State, and cannot be taken away except by the terms of the contract. (*State v. Miller*, 50 Mo. 129; *Clark v. Mitchell et al.*, 64 Mo. 576.) The contract in question imposed no obligation on Gregory or his assignees, to look to the application of the money which the town of New Franklin was authorized to raise.

His obligation was to pay semi-annually the sum of $250 to the trustees, in consideration of which he acquired the right to exercise the privilege of conducting a lottery until such payments amounted to the sum of $15,000, and we are at a loss to perceive on what principle the right thus acquired can be taken away, because the town of New Franklin, through its trustees, wasted or misapplied the payment. Neither he nor his assignees had power over the town or its trustees. His duty was to pay, and theirs to make the proper application. If, even, the defendants stood in the place of the trustees, and were responsible for their acts, it might, under the doctrine as laid down in 2 Dill. Mun. Cor., Sec. 720, well be doubted whether the privilege or franchise could be forfeited in this proceeding. It is there stated "that in no instance have the courts of this country declared forfeited the charter or franchise of a municipal corporation for the acts or misconduct of its agents or officers. That this was done by English courts prior to the revolution of 1688, is well known. The case of the city of London is the most conspicuous historical example. It is believed that such a remedy is not applicable to our corporations created as they are by statute for the benefit, not of the officers or a few persons, but of the whole body of the inhabitants and the public."

We have been driven to our conclusions by former adjudications of this court, the correctness of which we do not question. As to the impolicy of the act of the General Assembly in granting the privileges it did to the town of New Franklin, whereby the sale of lottery tickets has for years been authorized, against the sense of the people of the State, and to the debauchery of the public

morals, we have nothing to say. Nor have we anything to do with the fact that the trustees, in making the Gregory contracts, and the Legislature in ratifying them, have acted unwisely and continued till the year 1877 a business yielding large profits and gains to one contracting party and comparatively small to the other. We are to look to the contract, and, if fairly made, uncorrupted by fraud and untainted by illegal considerations, it is our duty to enforce and uphold the legal rights which it confers. Security to the rights of person and property demands a strict adherence to this rule, and it cannot be overleaped even though the purpose be to correct either a supposed or real great evil.

We are of the opinion that the judgment of the Court of Appeals, as well as that of the circuit court, should be reversed, and the complaint dismissed, which is accordingly hereby done, in which the other judges concur, except Judge NAPTON, who did not sit.

REVERSED.