The State ex rel. The Attorney General v. France.

---

THE STATE *ex rel.* THE ATTORNEY GENERAL v. FRANCE.

1. **Missouri State Lottery, Construction of Contract for Conducting it**: WHAT WAS AN INTERFERENCE BY THE PUBLIC AUTHORITIES WITHIN ITS MEANING. A contract for carrying on a lottery known as the Missouri State Lottery any where within the limits of the State stipulated that, in the event of any interference by the legislature, judiciary or any other power, so that the parties of the second part could not conduct the business, their obligation to make certain payments called for by the contract should cease. *Quo Warranto* proceedings were subsequently instituted against the conductors of the lottery, in which the circuit court decided that the

business was carried on in violation of law and awarded a judgment of ouster. From this judgment an appeal was taken, an appeal bond was given, superseding the judgment, and the judgment remained unenforced, and was finally reversed by the Supreme Court. Pending the appeal, the police of the city of St. Louis, with force and arms, arrested the persons engaged in the business in that city, and destroyed the property and appliances used by them in the business, in consequence of which they desisted from it. *Held*, that the judgment of ouster rendered by the circuit court and the acts of the police were not such interferences as released the payments called for by the contract. Nothing was an interference within the meaning of the contract unless it was done by some legally constituted power acting within the scope of duties assigned to it, and was of such a character as to have the legal effect of preventing the conduct of the business. The judgment having been superseded by the appeal bond, and finally reversed, never took effect; and the acts of the police were mere trespasses; *Held*, also, that as the right acquired by the contract to operate a lottery was co-extensive with the State, the acts of the authorities of a single municipality did not constitute such interference as was intended by the contract.

2.  **Expiration of Lottery Franchise.** Where a franchise was granted for a lottery to continue until the sum of $15,000 should be raised, and it appeared that, by the terms of a contract made pursuant to the grant, that sum was due to the beneficiary from the party who had undertaken to conduct the lottery, and there was no evidence that the latter was insolvent; *Held*, that whether the whole of the money was actually paid or not, the franchise had expired, and the beneficiary had no power to continue it in force by making a new contract for raising any part of the $15,000, that might be unpaid under the first contract.

### Quo Warranto.

Ouster Awarded

*E. T. Farrish* for relator.

*Wm. O. Bateman, Chester H. Krum* and *Jas. O. Broadhead* for respondents.

Norton, J.—This is an original proceeding by *quo warranto* at the relation of the attorney general, the information alleging that since the 1st day of January, 1878, the

defendants have been exercising and using, without lawful authority, a lottery franchise, known as the Missouri State Lottery, after said franchise had expired and lapsed in law and fact. Judgment of ouster is prayed.

The defendants, in their answer and return, assert their right to exercise the franchise they are charged with usurping, in virtue of a contract made in 1842, as modified and amended in 1849, by and between the trustees of the town of New Franklin and one Gregory, which said contract had been transferred to them through assignments, made by the representatives of said Gregory; that said contract conferred upon them the right to exercise the said lottery franchise till the 1st day of January, 1878; that this right had been interfered with, and by reason of a judgment of ouster rendered on the 22nd day of December, 1875, by the circuit court of St. Louis county, in a *quo warranto* proceeding instituted by the State against Murray, Miller & Co., the then owners of the franchise, they were prevented from exercising the same from that time till the 4th day of March, 1878, when the said judgment was reversed by this court; that they were thus interrupted and denied the right of pursuing the said lottery business for more than two years of the time allotted to them in said contract. The answer further avers that on the 14th day of December, 1878, the trustees of the town of New Franklin made a further contract with said Murray, Miller & Co., the assignees and successors of the said Gregory, by which it was agreed that in further consideration of the sum of $100 then paid, and which was to be considered as payment number one under said amended contract, the annual installments should continue as follows: On the 1st day of January, 1879, $100, on the 2nd day of January, 1880, $100, and so on in annual installments of $100 each until the sum of $13,400, as provided for in the contract of April 11th, 1849, should be fully raised, making the sum of $15,000 as provided for in the acts of the legislature and the contracts thereunder. It is further averred that neither

said Murray, Miller & Co., nor defendants, ever abandoned said lottery franchise or their rights or privileges under the laws and contracts relating thereto; that neither of the steps provided in said contract of 1842 for the termination of said contract by the act of said parties, was ever taken by either of the parties; that is to say, neither the notice declaring said contract null and void was ever given by said trustees, nor did said Murray, Miller & Co., or defendants, ever give to said trustees the ninety days notice provided in said contract as a condition precedent to the abandonment thereof by said Gregory or his assigns.

The plaintiff, in effect, demurs to defendants' answer by filing her motion for judgment notwithstanding what is therein set up.

The contract relied upon by defendants as a justification, entered into by and between the trustees of the town of New Franklin and the said Gregory in 1842, as modified in 1849, by virtue of authority conferred upon said trustees by an act of the general assembly passed in 1833, and amended in 1839, 1855 and 1870, has been heretofore before this court for adjudication in the cases of the *State v. Morrow*, 26 Mo. 141; *State v. Miller*, 50 Mo. 132; *State ex rel. v. Miller*, 66 Mo. 340, in all of which two distinct questions were made; the first of which was whether the trustees of said town were authorized by an act of the legislature to make the Gregory contract, and the second was, if they did have such power whether the right which was vested in Gregory under a contract made in the exercise of such power to conduct and manage a lottery could be taken away or in any manner impaired by legislative enactment. All of the said cases answer the first question in the affirmative, and the second in the negative.

Notwithstanding it was held in the last of the above cited cases that the right of Gregory and his assignees under the said contract expired according to its terms in 1877, and notwithstanding the admission made in the answer that by the terms thereof it expired on the 1st day of Jan-

uary, 1878, it is earnestly claimed by counsel that the right of defendants to exercise the privilege of selling lottery tickets should be continued for an additional length of time after the 1st day of January, 1878, equal to the time their business is alleged to have been suppressed by reason of the judgments of ouster and interference of the police of the city of St. Louis, set up in the answer, which suspension lasted from the 22nd day of December, 1875, to March 4th, 1878. The question thus presented as to whether or not the said interference as set up had the effect claimed by counsel, cannot possibly be solved without a construction of the following clause contained in the Gregory contract, viz : "And the respective parties further agree that the party of the second part (Gregory) shall not be bound by this agreement in the event of any interference by the legislature, judiciary or any other power, so that he cannot conduct the business, in which case payment is to be made by him to the time of such interference only." It is contended on behalf of the State that the said contract by virtue of the above clause was terminated as soon as such interference as is therein mentioned occurred, and that upon its occurrence both parties were absolved from all obligations and rights created by it. It it contended, on the other hand, that such interference of itself neither abrogates, annuls nor cancels the contract, but is merely recognized as an occurrence which would authorize Gregory or his assignee to abandon it, and that this is left to the option of defendants, and until the exercise of such option the contract remains in force.

Unless it appears from the averments made in the answer that the interference was such an one as is mentioned in the above clause of the contract, it is wholly immaterial which of the above antagonistic views is correct, since before an interference can have the effect of either annulling the contract the moment it occurs or annulling it only after such occurrence, and after an exercise of an option by defendants to abandon it, it must fall within the class of in-

terferences alluded to in the said clause. The interferences therein referred to only include such as shall be made either by the legislature, the judiciary, or any other power, which we understand to mean any legally constituted power acting within the scope of duties assigned it. It is not sufficient that it should be simply an interference, nor is it sufficient that it be made by the legislature, judiciary or other power; but when so made it must be of such a character as to have the legal effect of preventing defendants from conducting the lottery business, before exemption in any view can be claimed by them from the obligations imposed by the contract. It follows from what has been said, that unless the interference set up in defendants' answer had the effect in law of suspending the said business of defendants and preventing them from conducting it, the contract of 1842, as modified in 1849, continued in full force in all its parts, and the obligation of defendants to pay the semi-annual installments mentioned therein was neither discharged nor the right of the trustees of the town of New Franklin to recover the said sums, if not paid, in anywise impaired.

The question then arises, was the judgment of ouster rendered in the case of the *State v. Miller, supra,* such an interference by the judiciary as prevented defendants from carrying on their business? We think it was not, and for the following reasons: Said judgment was rendered by the circuit court of St. Louis county on the 22nd day of December, 1875, from which defendants prosecuted an appeal to the St. Louis court of appeals, and also from that court to this. Defendants upon taking said appeal executed a bond which operated as a supersedeas of the judgment appealed from, and suspended all action under it during the pendency of such appeal. That the appeal did operate as a supersedeas was expressly held by this court on a motion made by defendants in the case for a supersedeas. The court made the following ruling on said motion: "The court having fully heard and considered the appel-

lants' motion for a supersedeas herein, and being of opinion that an order of supersedeas is not necessary, as this is a civil case, and that the bond already filed by the appellants and approved by the court below acts as a supersedeas, doth order that the motion be overruled." It is, therefore, manifest that the said judgment of ouster, if an interference by the judiciary, was not such an interference as prevented defendants from "conducting their business," for said judgment was not executed, and could not be executed during the pendency of the appeal. It is nowhere in the answer averred that the said judgment was ever executed or that defendants were in fact ousted by it.

The only other interference set up in the answer is, that after the rendition of said judgment the police force of the city of St. Louis did with force and arms arrest the agents of defendants and seize and destroy the property and appliances of defendants used in carrying on their business, whereby they were prevented from running a lottery and from doing business under said contract. This is clearly not such an interference as was provided against in the lottery contract. It is not averred in the answer that the said police force was charged with the execution of said judgment of ouster, or that they were executing it, while engaged in doing the wrongful acts imputed to them in the answer. The averments made tend to show an aggravated case of trespass on the part of those persons directly participating in the commission of said wrongful acts, but they do not show any such interference as is contemplated by the contract any more than if the answer had alleged that the acts done and charged had been committed by a mob, instead of the police, or any more than if it had alleged that the property and appliances used by defendants in said pursuits had been burned by an incendiary or stolen by a thief, whereby their business was suspend‹ and they had thus been disabled from running a lottery.

Besides this the right of Gregory and his assignees under the contract to run a lottery was co-extensive with

the limits of the State, and was not confined to the limits of the city of St. Louis, and any interference by a municipal force preventing defendants from doing business in a particular locality is not such an interference as the contract provides for, to authorize an annulment of the contract, either upon its occurrence or its abandonment by an exercise of an option on defendants' part to abandon it.

It follows from what has been said that, notwithstanding the interference set up in the answer, the obligation of defendants to pay the semi-annual installments agreed to be paid until the full sum of $15.000, as provided for in said contract, was paid, remained in force, and that the right of the trustees of the town of New Franklin to receive such installments and enforce their payment has never ceased to exist, and as the said installments agreed to be paid amounted on the 1st day of January, 1878, to the full sum which the trustees were authorized to receive under the act of 1833, and as the said trustees, under the terms of the contract, if they have been complied with by defendants, have received said sum, and if they have not been complied with, the said trustees have a right to enforce the payment of so much as remains unpaid; that the contract, having been thus executed, the right of defendants to conduct a lottery under it terminated at the above named time, and the trustees of the town of New Franklin had no warrant in law to make any further contract in regard thereto, because in legal contemplation the sum of $15,000, the amount for raising which they had been authorized to contract for running a lottery, has been realized, it not appearing that defendants are insolvent, and that the unpaid balance due under said contract (if there is any such) cannot be collected from them. It also follows from what has been said that defendants cannot justify themselves in conducting said lottery on or after the 1st day of January, 1878, by reason of the contract set up in the answer, made on the 14th day of December, 1878, by the trustees of

the town of New Franklin, by which it was agreed that in consideration of $100 then paid, and the further sum of $100 to be paid on the 1st day of January, 1879, and the like sum of $100 to be paid each year thereafter, they should have the right to continue the lottery until the full sum of $13,400 had been received as provided in the contract of 1849.

It may, however, be observed in regard to this contract, that the object of the legislature as expressed in the act of 1833 in authorizing the trustees of the town of New Franklin to raise $15,000 by contracting for carrying on a lottery, was to enable said trustees to build a railroad from said town to the Missouri river. By an act amendatory thereof passed in 1839 they were authorized to use said fund in building a macadamized road instead of a railroad, and by another amendatory act in 1855 they were authorized to use the fund in building a plank road instead of a railroad or macadamized road, and by another amendatory act, passed in 1870, they were authorized to build a macadamized road instead of a railroad or plank road, which they were to commence in two months, and complete in eight months after the passage of the act. Such being the object of the bounty bestowed by the legislature upon the town of New Franklin, the trustees of said town should have availed themselves of it, by resorting to their action against the assignees of Gregory for any unpaid balance of the $15,000 due under the contract of 1849, instead of attempting to thwart the purposes of the general assembly by surrendering such right, and entering into a contract which indicates upon its face that it is in fraud of the above enactments, violative of their spirit, and intended more for the purpose of providing for the continuing and running a lottery than of raising money to build a macadamized road, which the law of 1870 authorizing its construction required to be commenced in two and finished in eight months after the passage thereof.

The contract of 1849 having been fully executed, and

the right of defendants acquired thereunder to conduct a lottery having expired according to its terms, on the 1st day of January, 1878, became *functus officio* and left nothing to amend by, and the amended contract of December, 1879, relied upon by defendants as a justification, cannot be attached to it so as to infuse life into it. Nor has such contract any original force for the reason, if for no other, that the said trustees having acquired the right to the full sum of $15,000 which they were authorized to raise by contracting for running a lottery, their power to make any further contract ceased.

The motion of plaintiff for judgment according to the prayer of the complaint, is hereby sustained, and judgment of ouster is hereby awarded; in which all concur, except NAPTON, J., not sitting.