THE STATE OF MISSOURI, Respondent, *v.* GEORGE MILLER, Appellant.

1. *Constitution—Contract, impairing obligation of — Missouri State lottery— Right to sell tickets, continued how long.*—The transfer of the Missouri State lottery to Gregory in June, 1842, constituted a valid contract which could not be impaired by the act of December, 1842, prohibiting the sale of lottery tickets in this State.   And the right to sell the lottery tickets did not cease when the total net profits of the concern amounted to $15,000 — the sum authorized by the act of January, 1833, to be raised for the railroad to New Franklin—but continued until the last installment due for the use of the town of New Franklin had become due and payable.

2. *Constitution — Contracts, acts impairing obligation of.*—Where a contract, when made, is valid by the laws of the State as then expounded by the departments of government and administered in its courts of justice, its validity and obligation cannot be impaired by any subsequent constitutional ordinance or act of the Legislature, or decision of its courts, altering the construction of the law.

*Appeal from St. Louis Court of Criminal Correction.*

For the particulars of the contract with Gregory referred to in the decision, see State v. Morrow, 26 Mo. 135.

*R. E. Rombauer*, for appellant.

The interpretation of the law, and the contract under the law, by repeated adjudications of the court of last resort in this State, furnished a rule of property on which the defendant in this case

9—VOL. L.

had every reason to rely. (Ohio Life Ins. & Trust Co. v. Debolt, 16 How. 432; Gelpcke v. City of Dubuque, 1 Wall. 206; see also Dodge v. Woolsey, 18 How. 331, 360.)

This case falls within the principle of the case of The State v. Hawthorn, 9 Mo. 389. The terms employed in transferring the lottery of New Franklin are the same as those used in the contract in the case of Hawthorn just mentioned, and no point was made on them in that case. The judgment there stands on the assump-- tion that the contract was a legal one. (State v. Morrow, 26 Mo. 142.)

The object of the contract made between the town of New Franklin and Walter Gregory, was to raise $15,000 to the trustees of the town and not to Gray and Eichholz, or Gregory. For that reason it is provided that all moneys paid by Gray and Eichholz to the trustees (and not all money raised by them by the lottery, above expenses) shall be credited to Gregory as part of the $15,000 to be by him paid to the trustees. For that reason it is provided that Gregory was to pay toward the same amount (the amount of $15,000) $250 on the 1st day of January, 1843, $250 on the 1st day of June, 1843, and so on, paying the said sum of $250 semi-annually until the aforesaid sum of $15,000 is fully raised to the said parties of the first part (the trustees of the town of New Franklin). Can counsel for the State point out any mode by which, under this clause, the sum of $15,000 could have been raised to the trustees of New Franklin except by continuing the semi-annual payments of $250 until their aggregate, with the amount previously received from Gray and Eichholz, amounted to the sum of $15,000? If they can, they certainly have not attempted to do so.

II. The Court of Criminal Correction holds that the franchise ceases when the proceeds, after deducting expenses, amount to the sum authorized to be raised. This is simply a decision that Gregory was not acting under a contract, but was a mere agent of the New Franklin board of trustees, and practically it overrules the two cases decided by this court.

III. The only difference between the present case and the two other cases is that in the latter an act of the Legislature prohib-

ited the sale of lotteries, and now that prohibition is made in the new State constitution. The convention could no more pass a law or constitutional provision impairing the obligation of contracts than the Legislature. (Cummings v. The State of Missouri, 4 Wall. 277; French v. Tumlin, 10 Am. Law Reg., N. S., 641; Cohen v. Virginia, 6 Wheat. 414; McNeely v. Gregory, 10 Am. Law Reg., N. S., 647, note.)

*Krum & Patrick*, with *John M. Krum*, for respondent.

1. The right of the trustees of New Franklin to raise money by lottery was limited by law, and the governor's proclamation to a right to raise by lottery a sum not exceeding $15,000.

2. When making the contract of 1842, they (the trustees) could assign to Gregory no greater right to raise money by lottery than they themselves possessed.

3. By the terms of the contract of 1842, said trustees do not profess, nor did they intend to convey, any other power to raise money by lottery than they themselves possessed.

4. Therefore, Gregory took, under said contract, only a power to raise the sum of $15,000.

5. As that sum, after deducting all costs, is admitted to have been raised, the lottery power under said contract, acts and proclamation is exhausted by its own limitation, viz : by the raising of the amount authorized to be raised by said power.

6. But if it could be held, from a legal and just construction of the terms of the contract of 1842, that the said trustees intended to violate their duty and convey to Gregory a different right to raise money by lottery from what they themselves possessed, the contract must stand as wholly void, and no rights can be taken under it.

7. The act of 1855 could not validate the contract, because to enable it to do so would require that it should be given a retrospective operation, and to give it such operation would make it violate the constitution of the State.

8. Therefore, if said contract was void in 1842, it is void now.

9. In the event that the New Franklin lottery grant was exhausted prior to the offense specified in this information, the

defendant stands before the general law against lotteries in the same position as any vendor of lottery tickets who did not set up a pretense of any immunity.

10. In the event that the contract of 1842 was void, and was not validated by the law of 1855, the defendant occupies the position of any other violator of law who sells lottery tickets in this State.

WAGNER, Judge, delivered the opinion of the court.

The appellant was convicted in the Court of Criminal Correction for selling lottery tickets in the Missouri State Lottery, for the benefit of the town of New Franklin, and he brings his case here for review by appeal. It is insisted by his counsel that according to the prior adjudications of this court the matter is conclusively settled, and that all further inquiry is precluded. The real question here presented has been passed upon by this court in three several decisions (State v. Hawthorn, 9 Mo. 389; State v. Morrow, 12 Mo. 279; State v. Morrow, 26 Mo. 131).

Hawthorn's case was decided upon the act authorizing a sum of money to be raised by lottery, to be given to the Sisters of Charity in St. Louis, for the use of the hospital over which they had the control and management. The amount to be raised and the manner of making payments were different from the provisions contained in the act in reference to the town of New Franklin, but in all other respects they were precisely the same. Therefore, when indictments were found against Morrow for selling tickets by authority of the last named act, it was held that the decision in Hawthorn's case was controlling authority, and that the exposition of the law in respect to the St. Louis Hospital was equally applicable to the act in regard to the town of New Franklin. The transfer of the lottery scheme to Gregory by the commissioners constituted a valid contract, which could not be impaired either by the Legislature or by a constitutional convention.

But a point is now raised as to the interpretation of the contract, which, it is contended, was not made in the cases heretofore decided. It is this: that when the sum of $15,000 was raised by the managers, then the law had accomplished its object and

their functions were exhausted, without regard to the question whether the time had come to pay the money over in installments for the use of the town, according to the terms of the contract; in other words, that the franchise ceased when the proceeds, after deducting expenses, amounted to the sum authorized to be raised. It is admitted that more than that sum has been raised by the managers, and that the semi-annual installments have been promptly paid as they fell due, but the whole amount has not been paid, as the time has not yet arrived when it is all due.   It is obvious that this construction of the contract, as contended for, cannot be reconciled with the construction given to the hospital lottery contract in the Hawthorn case, and which, as before said, is precisely the same as the New Franklin contract, except only in the amount of money to be raised and the character of the payments. It is there expressly said by the court: "The right to sell the tickets was transferred to Gregory *until* that portion of the proceeds of the sale which belonged to the hospital should amount to the sum authorized to be raised by the act."

It makes no difference that the point was not directly alluded to by counsel in Morrow's cases; for the court, in both instances, summarily disposed of the matter by declaring that the judgment in Hawthorn's case was conclusive of the whole question, and that the cases were identical and parallel throughout.  These cases furnished a rule of property, and the appellant, when he succeeded to the interest of Gregory, could confidently rely upon them for the protection of his rights.

Where a contract, when made, is valid by the laws of the State as then expounded by the departments of the government and administered in its courts of justice, its validity and obligation cannot be impaired by any subsequent constitutional ordinance or act of the Legislature, or decision of its courts, altering the construction of the law.

The establishment and continuance of a lottery is doubtless an evil, but its abolishment by throwing down the legal barriers which have been built up for the protection of the citizen and his property would be a still greater evil.

We think that every question presented in this case was settled

in the cases before referred to, and the result is that the judgment must be reversed and the defendant discharged. Judge Bliss concurs. Judge Adams was not on the bench when this cause was argued.