70  231
69a 523

## KNIGHT v. THE KANSAS CITY, ST. JOSEPH & COUNCIL BLUFFS RAILROAD COMPANY, *Appellant*.

1. **City Ordinance**: EVIDENCE OF APPROVAL BY THE MAYOR. The validity of an ordinance admitted to have been passed by the city council of the city of St. Joseph being denied on the ground that the mayor had never approved it, and no copy with his signature attached being found among the city records, it was shown by the testimony of the mayor that he had desired the passage of the ordinance, and his impression was that he had signed it. It was also shown that it was recorded in a book kept by the city in which ordinances passed and approved were entered. The charter required this book to be kept, but did not require the mayor to sign the record. It was, however, the practice, but not the uniform practice to sign. The present ordinance was not signed in this book. It was also shown that this ordinance was published in the official newspaper of the city as an ordinance passed by the council and approved by the mayor· that the proper officer of the city received, filed and kept a certified copy of a resolution of a railroad company accepting a grant of privileges conferred by the ordinance, and that the company had availed itself of the grant by laying down its track on one of the streets of the city, and using the same with the knowledge of the city officials and without objection from them. *Held*, that this was sufficient evidence of the approval of the ordinance.

2. **Condition Subsequent**: RAILROAD RIGHT OF WAY: CITY ORDINANCE. A city ordinance granting to a railroad company a right of way over a street provided that the grant should become null and void if the company should ever remove its machine shops from the city. *Held*, that this was a condition subsequent, in which no one had any legal interest but the company and the city, and if the company violated the condition by removing the shops, this did not *ipso facto* terminate the right of way so as to entitle the owner of a lot abutting upon the street to maintain an action of damages against the railroad company as for an unlawful occupation of the street.

*Appeal from Buchanan Circuit Court.*—HON. JOS. P. GRUBB,
Judge.

REVERSED.

*Willard P. Hall* for appellant.

1. The stipulation between the city and appellant as to the location of appellant's machine shops is a condition subsequent, of which no one can avail himself except the city. *Holden v. Joy,* 17 Wall. 250; *Kennett v. Plummer,* 28 Mo. 145; *Cooper v. Roberts,* 18 How. 181; 4 Kent's Com., 127 to 130 (7 Ed.)

2. The ordinance was signed by the mayor. This is shown by its being recorded in the book of ordinances; by its having been printed in the official paper; by the acceptance of appellant filed in the city register's office; by appellant building its railroad in fifth street after said acceptance was so filed, without any objection on the part of the city; and by the oath of the mayor himself who signed the ordinance. The mere fact that the ordinance as signed by the mayor is not found in the register's office merely shows that it has been lost, mislaid or destroyed; but lost records can be supplied by parol or any other competent evidence. *Hedrick v. Hughes,* 15 Wall. 124; *Welles v. Battelle,* 11 Mass. 477; *Kellar v. Savage,* 17 Me. 444.

3. The fact that the scraps of paper, which it is supposed was the original ordinance, are not signed by the mayor, is no evidence at all. No person fit to be mayor would ever sign an ordinance in such a condition. It is usual and proper for a fair copy of all ordinances to be made out for the executive officer to examine and approve. He never signs a mutilated, erased or interlined paper. If he did, the grossest frauds might be perpetrated; interlineations and erasures could be made just as well after the mayor's approval as before. And in order to prevent this, the rule is as stated, and is believed to be uiversal.

4. The mayor signing the ordinance on the record book is of no significance, and gives no additional weight to said book as evidence. The validity of the ordinance depends upon his approving it before it is recorded. There is no law authorizing him to sign the record book of ordinances, and his doing so is without effect. It is the duty of the city register to record all ordinances in said record book after they are passed and approved; and when he so records an ordinance, with the word "approved," or with the words "approved by the mayor," underwritten, it is evidence both that the council passed the ordinance and that the mayor signed it, according to the maxim, *omnia presumunter solenitur esse acta.* Broom's Legal Maxims, 729 (3 Ed.)

5. It is notorious that city and town officers are careless with regard to preserving papers in their offices. Original petitions, motions and ordinances, after they are acted upon and recorded, are treated frequently as mere waste paper. Reliance is placed upon the record, and not upon the original papers.

*Bennett Pike* for respondent.

1. The validity of the ordinance granting the right to defendant is made to depend, by the provisions of the charter, upon the approval and signature of the mayor. The only evidence that can be adduced to show that the mayor approved an act is that he signed it. The signing is not merely directory; it is matter of substance—a part of the thing to be done—and, therefore, essential. *Graham v. City of Carondelet*, 33 Mo. 269; *Kepner v. Comm.*, 40 Pa. St. 124; *Conboy v. Iowa City*, 2 Iowa 90, 95; *Saxton v. Beach*, 50 Mo. 488.

2. Even if the ordinance were valid, the grant of the right of way has ceased absolutely. The grant is not upon condition that they shall maintain their machine shops, &c., in said city, but the fact of the removal of said ma-

234    SUPREME COURT OF MISSOURI,

Knight v. The Kansas City, St. Joseph & Council Bluffs Railroad Company.

chine shops beyond the limits of said city is in itself the limit beyond which the estate granted no longer exists. In other words, the estate granted is not defeated, but determined by such removal. The 5th section may properly be regarded in connection with the duty of acceptance upon the part of the railroad company as an agreement that the removal of the machine shops should *ipso facto* constitute an absolute determination of the grant.

HENRY, J.—This was a suit for damages for an alleged unlawful entry by defendant upon Fifth street in the city of St. Joseph, and digging up and obstructing said street in front of plaintiff's premises, and constructing railroad tracks thereon, by means of which the street was obstructed and travel thereon impeded, and access to plaintiff's said premises destroyed. The petition also asked for an injunction. The defense relied upon was, that by an ordinance of the city council the defendant was granted a right of way over said street, and authorized to construct its said road along and upon said street at the point where plaintiff's premises are situated, upon certain conditions specified in said ordinance; provided the defendant accepted said grant in the manner in the ordinance specified; and it was alleged that it was so accepted by defendant. Plaintiff denied the existence of the ordinance. The court, after hearing the cause, found the issues for plaintiff, and rendered its judgment enjoining and restraining defendant as prayed in the petition, and the defendant has duly prosecuted his appeal.

The only questions presented which it is necessary to consider are: First, In regard to the validity of the ordinance in question; Second, If valid, did a breach of the conditions upon which the right of way was granted terminate the right of defendant to use and occupy the street for its railroad tracks? That the city authorities of St. Joseph had power to grant defendant the right of way for its railroad along the street is not controverted by respond-

ent. If the ordinance in question was passed by the council and approved by the mayor, its acceptance by the company constituted a contract between the city and the company valid by the laws of this State, the obligation of which could not be impaired by any subsequent action of the State authorities. *State v. Miller*, 50 Mo. 133.

The first question, therefore, for solution is, whether the ordinance was approved by the mayor. That it was 1. CITY ORDINANCE: adopted by the council is not controverted, evidence of approval by the but if not approved by the mayor, it was of no mayor. force or validity. The evidence for defendant on that issue was a copy of a resolution adopted on the 14th day of August, 1873, by the board of directors of the defendant company, accepting the grant on the terms prescribed by the ordinance, a copy of which resolution was delivered by said company to the city of St. Joseph and filed and kept in the office of the register of said city; a copy of the ordinance purporting to have been approved and signed by the mayor on the 8th day of March, 1873, attested by W. W. Brown, then city register, having the seal of the city attached, with the certificate of Hardin Davis that it was a "full and true copy of an ordinance of record in the book of special ordinances of the city of St. Joseph on file in the office of the city register;" a copy of "The Morning Herald," a newspaper published in said city, and the official paper of the city, of date March 12th, 1873, in which ordinances of the city, from time to time passed and approved, were published, containing the ordinance in question, purporting to have been signed and approved by the mayor of said city. John Severance, mayor of the city in 1873 when the ordinance was adopted by the council, testified that his best impression was that he did signify his approval of the ordinance by signing it as the law required.

In the record of ordinances the name of the mayor was not to the approval clause. Hardin Davis also testified that he had what purported to be the original ordinance,

and it did not show an approval by the mayor. What he supposed was the original ordinance, (for in one place he states that it purported to be, and in another that he supposed it to be the original ordinance,) was written on several slips of paper, some of which were a good deal erased and interlined. This witness further testified that although it was the practice, after an ordinance was recorded in the record book of ordinances, for the mayor to sign it, this was not always done, and that there were a number of ordinances in the record book in that condition, among them one levying city taxes for the year 1873. It was not, under the city charter, necessary for the mayor to sign the ordinance in the book in which they were required to be recorded.

A lost or destroyed record may be established by parol evidence. *Hedrick v. Hughes*, 15 Wall. 124. And the evidence in this case, we think, fully established the fact that the ordinance in question was approved by the mayor. The slips of paper which the witness, Davis, thought purported to be the original ordinance, may have been, probably were, the ordinance prepared by the member of the council who introduced it; but it is hardly to be supposed that it would have been presented to the mayor for his approval on detached pieces of paper containing erasures and interlineations, or that he would have approved it in that condition. The only circumstance which witness stated, showing that these pieces of paper purported to be the original ordinance, was an indorsement on the envelope in which they were found, "Approved March 8th, 1873," in the hand-writing of W. W. Brown, at that date city register. Nothing on the face of the papers, or either of them, indicated that they contained the original ordinance; and in view of all the facts proved, it is not a violent inference that they were used in making the copy which was presented to the mayor for his approval, and that the ordinance so approved was with these slips of paper kept by the register in that envelope.

Mr. Severance testified that he desired the passage of the ordinance, and that his impression was he signed it. It was recorded in the book kept by the city in which ordinances passed and approved were entered. It was published in the official newspaper of the city as an ordinance passed by the council and approved by the mayor. The city received, filed and kept a certified copy of the resolution of defendant's board of directors accepting the grant on the terms proposed in the ordinance. The defendant proceeded to exercise the right granted by constructing its road-bed and laying its tracks on and along Fifth street, one of the public thoroughfares of the city, with the knowledge of the city officials. The city, so far as this record shows, did not then object, nor has it since complained of defendant's proceedings. This group of significant facts leaves any conclusion out of the question, but that the mayor did approve the ordinance; and the loss or destruction of the original cannot deprive defendant of its rights derived from the ordinance. The facts clearly established by the evidence would estop the city from asserting against the company that the ordinance was not duly approved by the mayor, and if so, it does not lie in the mouth of any other person to allege the invalidity of the ordinance against the company.

By the 5th section of the ordinance it was provided that if the railroad company should " at any time remove their general office, principal machine shops or car works from St. Joseph to any other point on the road, the right of way granted in this ordinance over Fifth street shall become null and void." The principal machine shops were removed beyond the limits of the city, and it is contended that " the estate granted ceased," or " was determined by such removal." The condition was not a precedent condition, to be complied with before the grant took effect, or a limitation which fixed the period of its duration; but a subsequent condition in which no one had any legal interest except

2. CONDITION SUBSEQUENT: railroad right of way: city ordinance.

the parties, the city and the company. It was a matter of contract between them, and the city might have waived a compliance with the condition at any time, nor was an ordinance for such purpose necessary. The breach of the condition did not, therefore, *ipso facto* terminate the right of way, and, as against every one except the city, the right continued in the company, and the city herself might have agreed to the removal of the shops, or after their removal expressly sanctioned it, or by long acquiescence been estopped from setting up the breach against the company. That no one but the city could take advantage of the breach of the condition on which the right was granted, is a doctrine well settled.

In his commentaries, volume 4, page 439, Chancellor Kent clearly stated the distinctions on this subject: "Words of limitation mark the period which is to determine the estate; but words of condition render the estate liable to be defeated in the intermediate time if the event expressed in the condition arises before the determination of the estate or completion of the period described by the limitation." "The material distinction between a condition and a limitation consists in this, that a condition does not defeat the estate, although it be broken, until entry by the grantor or his heirs; and when the grantor enters, he is in as of his former estate." "Conditions can only be reserved for the benefit of the grantor and his heirs. A stranger cannot take advantage of the breach of them." *Kennett v. Plummer*, 28 Mo. 145 ; *St. Louis v. Atlantic & Pacific R. R. Co.*, 66 Mo. 251, and particularly cases there cited; *Holden v. Joy*, 17 Wall. 251. As the judgment must be reversed for the reasons above indicated, it is not necessary to pass upon the questions raised by the motion for a new trial on the ground of surprise and newly discovered evidence. Judgment reversed and cause remanded. All concur.