HOVELMAN v. THE KANSAS CITY HORSE RAILROAD COMPANY,
*Appellant.*

1. **Corporation**: ABUSE OF CORPORATE POWERS: REMEDIABLE BY THE STATE ONLY. It is the settled rule that the acts of a corporation can be assailed for abuse or excess of its corporate powers only in a direct proceeding brought by the State for that purpose. Hence, where a company chartered to build a horse railroad between certain points in a city accepted from the common council of the city a right of way over streets not lying between those points, and its successor in title was proceeding to construct a road over those streets; *Held*, that, conceding this was an abuse or excess of the powers of the corporation, a private citizen whose interests were affected could not claim an injunction on that ground.

2. ——: GRANT OF RIGHT OF WAY BY COMMON COUNCIL: CONDITION SUBSEQUENT: FORFEITURE FOR RREACH. The common council of a city granted to a horse railroad company a right of way over certain streets, providing in the ordinance that the road should be completed within twelve months from acceptance of the grant by the company, and that in case of failure so to complete it, the council might take away the franchise. *Held*, that this provision was a condition subsequent, and that the right of way, when accepted by the company, vested at once, subject to be defeated at the election of the city for breach of the condition, but that a private citizen could not take advantage of a breach.

3. Municipal Corporation: IMPAIRMENT OF CONTRACT RIGHTS: CONSTITUTIONAL LAW. When a municipal corporation, by authority of the State, contracts with a third person, whereby rights become vested in such person, they cannot be divested by the State. Such a contract is *pro hac vice* the contract of the State and cannot be impaired by it. Hence, where the common council of a city, in the exercise of power conferred by the legislature, made an absolute grant to a horse railroad company of the right to build its road on certain streets, and the company accepted the grant and built a part of the road at great expense; *Held*, that the legislature could not, by a subsequent amendment of the city charter, make the right of the company to build the rest of the road dependent on the consent of a majority of the property owners on the street.

4. Corporation: POWER TO MORTGAGE RIGHT OF WAY. The right of way of a horse railroad company in a public street is an incorporeal hereditament, and may be mortgaged by the company. R. S. 1879, § 706.

*Appeal from Jackson Circuit Court.*—HON. F. M. BLACK, Judge.

REVERSED.

*John C. Tarsney* for appellant.

*John K. Cravens* for respondent.

NORTON, J.—This case is before us on appeal from the judgment of the circuit court of Jackson county, perpetually enjoining defendants from constructing and operating a horse railroad on Eighteenth street in Kansas City.

It appears from the record that the Union Depot Horse

Railroad Company became a corporation in 1872, and was organized, as stated in the articles of association, "for the purpose of constructing, operating and maintaining a horse railroad from the junction of Main and Delaware streets, in Kansas City, to the Union Depot in said city, and thence to the Union Stock Yards, in West Kansas City; that on the 9th day of September, 1873, the city council of said city passed an ordinance granting the right of way to said horse railroad company over certain streets in said city, including among the number, Eighteenth street from the eastern limits of the city to Main street, and authorizing it to construct and operate a horse railroad on said street; that prior to 1874 the said company had constructed its road over all the streets named in said ordinance except Eighteenth street, and except that part of Main street between Eighteenth and Eleventh streets; that in 1873 the said company made a deed of trust to secure the payment of 120 bonds issued by said company for $500 each, in which they conveyed to the trustee therein named, all of said company's real estate, rolling stock, houses, depots, rights of way, franchises, etc.; that default was made in the payment of said bonds, and the sheriff of Jackson county, as trustee, and in pursuance of a power given by said deed, sold in 1875 the property mortgaged, and by deed conveyed the same to one Dye, who was the purchaser at said sale, including in said conveyance all the right of way mentioned in said ordinance, except that over Eighteenth street, and that over Main from Eighteenth street to the junction of Main and Delaware; that said Dye, in 1875, conveyed to the Kansas City Horse Railroad Company, a corporation duly organized for the purpose of operating a horse railroad in Kansas City and its vicinity, and the defendant in this suit, all that was conveyed to him by said sheriff; that the said Kansas City Horse Railroad Company, claiming in virtue of the aforesaid sale to be possessed and the owner of the right of way over Eighteenth street, commenced in 1881 constructing its road on said Eighteenth

street, when plaintiffs, who are the owners of lots abutting
on said street, filed their petition in this cause setting up
substantially the above facts, and further alleging that the
Union Depot Horse Railroad Company had no power under
its articles of association to take a right of way over said
Eighteenth street nor construct and operate its road thereon,
first, because said Eighteenth street was south and east of
the junction of Main and Delaware, and was outside the
terminal points mentioned in the articles of association;
second, because the said company not having completed its
road over said street in one year after the acceptance by
the company of the rights of way granted in the ordinance,
the right to do so thereafter became forfeited under the 6th
section of said ordinance, which provides that " said com-
pany shall have their road completed over all the streets
and parts of streets where they are granted a franchise by
this ordinance, within twelve months from the acceptance
by the company of this ordinance,      *      *      and in
case of failure to have the same completed as aforesaid     *
     *     the common council may take away their fran-
chise by a two-thirds vote; provided that the company
may contest such declaration of forfeiture in the courts of
competent jurisdiction; third, because neither the said
Union Depot Horse Railroad Company nor defendant claim-
ing under it had obtained the consent of the property own-
ers on said street owning a majority in front feet of the
property fronting between the points on Eighteenth street
where such road is proposed to be constructed.    The peti-
tion concludes with a prayer for an injunction.

The defendant, in its answer, after denying certain aver-
ments in the petition, alleges that the sheriff of Jackson
county, in selling the property under the deed of trust be-
fore mentioned, did in fact sell the right of way over Eight-
eenth street to one Dye, and that in making his deed, by
mistake he omitted to convey it, and that to correct this
mistake, the said sheriff, as trustee, in 1881 made a deed to
said Dye conveying to him said right of way as well as all

the other property mentioned in said deed of trust; that said Dye, in November, 1881, made a deed of correction conveying to defendant all of the property purchased by him at said sale, and describing it as it was described in the said deed of said sheriff to him. It also sets up that in July, 1875, the Union Depot Horse Railroad Company executed and delivered to defendant a lease for fifty years of all the property and effects of said company, including right of way over Eighteenth street. It also alleges that the Union Depot Horse Railroad Company constructed and put in operation a continuous line of railway from Forest Avenue and Twelfth street, 900 feet south, and three-fourths of a mile east of the junction of Main and Delaware, and thence from said junction to the Union Depot, and thence to the Union Stock Yards; that said company had put in operation under said ordinance upwards of three miles of street railroad, and in constructing and operating the same had expended over $100,000; that about one mile of said road is outside the terminal points specified in the articles of association of said company, and that a large part of said sum was expended in constructing and maintaining that part of said road outside said terminal points.

Upon the trial the court rendered a decree perpetually enjoining defendant from constructing its road on Eighteenth street, from which the defendant has appealed to this court.

One of the controlling questions presented by the record in this case is: Conceding that the Union Depot Horse Railroad Company (under whom defendant claims) in accepting and receiving from the city council of Kansas City the grant of a right of way over Eighteenth street for the purpose of constructing and operating its road thereon, passed the limits of its power, as set forth in the articles of association whereby it became incorporate, can plaintiffs be heard to set that up and ground their right of action on that fact? As preliminary to the solution of this question it may be observed that under the articles of association

which gave life to the Union Depot Horse Railroad Company as a corporation, it had the unquestioned right to receive from Kansas City a grant of the right of way for the purpose of constructing, operating and maintaining a road over the streets of said city from the junction of Main and Delaware streets to the Union Depot and thence to the Union Stock Yards. It may also be observed that the common council of the city, in the exercise of a power conferred by the charter of the city, did on the 9th day of September, 1873, pass an ordinance, one section of which is as follows:

1. That the Union Depot Horse Railroad Company, a corporation duly organized under the laws of the State of Missouri, be and they are hereby authorized to construct, maintain and operate, in accordance with the general ordinances of the City of Kansas, governing horse railroads, except wherein otherwise especially provided, their horse railroad within the city of Kansas, upon and along the following streets and avenues to-wit: On Eighteenth street, from the eastern limits of the city, westward to Main street; on Main street, from Eighteenth street to the junction of Main and Delaware streets; on Twelfth street, from Forest Avenue to Grand Avenue; on Grand Avenue from Twelfth street to Eleventh; on Eleventh street from Grand Avenue to Main street, with right to cross the track of the Kansas City & Westport Horse Railroad Company on Walnut street; on Delaware street from Main street to Sixth street; on Sixth street from Delaware street to Broadway street; on Broadway street from Sixth street to Fifth street; on Fifth street from Broadway street to Bluff street; on Bluff street to the bridge over the railroad tracks, across said bridge on the track already thereon, unless the same shall be removed, in which case the said company shall still have the right of way over said bridge and to Union Avenue; on Union Avenue, from the bridge aforesaid, to Mulberry street; on Mulberry street, from Union Avenue to Eleventh street; on Eleventh street, from Mulberry street to Liberty street; on Liberty street, from Eleventh street to Ottawa

street; on Ottawa street, from Liberty street to the State line; and that there shall be only one track on Union Avenue from 150 feet east of Santa Fe street to Mulberry street, with the necessary connection of tracks, switches and turn-outs to operate the same, and the right to cross the tracks of any other company where necessary on any of the streets aforesaid.

It may also be observed that the said company accepted in due form said grant, and it is conceded that in 1874, and prior thereto, said company constructed its railroad on all the streets mentioned in said ordinance except Eighteenth street from the eastern limits of the city west to Main street, and except on Main street from Eighteenth street north to Eleventh street. It may also be observed that so much of the road as was constructed on Twelfth street from Forest Avenue to Grand Avenue, and on Grand Avenue from Twelfth to Eleventh street, and on Eleventh street from Grand Avenue to Main street, and thence from Main street to the junction of Delaware and Main streets, lay to the south and east of said junction, and that no one of the above specified streets on which the road was constructed, lay between the junction of Main and Delaware streets and the Union Depot. This will be manifest from the following map. It may be further observed that said Union Depot Horse Railroad and defendant have, ever since 1874, maintained and operated its horse railroad on said streets without objection from said city or the State, and that large sums of money were expended in constructing said railroad on said streets. It also appears that the road was not constructed on said Eighteenth street in consequence of a financial panic, and the inability of the said corporation to negotiate its bonds, and that the work of constructing it on said street was not resumed or begun till 1881, when defendant was enjoined in this proceeding from further prosecuting it.

While it may be true, as counsel for plaintiff contend, that under the articles of association the corporation ex-

**1. CORPORATION:** **abuse of corporate powers: remediable by the state only.** ceeded the powers it acquired in virtue of them, by accepting a grant of the right of way over this particular street, viz : Eighteenth street, for the purpose of constructing its road, we are of the opinion that the question can only be raised by the State in a proceeding instituted for that purpose. We can perceive no distinction in principle between this case and the case of *Chambers v. City of St. Louis*, 29 Mo. 543, where the question was presented whether the city of St. Louis, being only authorized to purchase such lands as might be necessary for the purposes of the corporation, could take lands outside of her limits not necessary for such purposes. Judge Scott, in delivering the opinion of the court, observed : " Whether these lands are necessary for the corporation, is a question that can only arise in a proceeding instituted by the State against the city for abusing her right to purchase lands. The city had a power to purchase ; if that power has been exceeded, then it has been violated, and the city charter may be forfeited in a suitable proceeding ; and until that is done she would hold the land. The city may hold lands outside of the city for certain purposes. Shall she be compelled to contest with every occupant who may get possession of them her right to take and hold lands ? There being a right in the city to purchase, if there is a capacity in the vendor to convey so soon as a conveyance is made there is a complete sale ; and if the corporation in purchasing violates or abuses the power to do so, that is no concern of the vendor or his heirs. It is a matter between the State and the city.　＊　＊　The city is duly incorporated with authority to hold, purchase and convey such real estate as the purposes of the corporation may require, and if in holding and purchasing real estate she passes the exact line of her power, it belongs to the government of the State to exact a forfeiture of her charter, and it is not for the courts in a collateral way to determine the question of misuser by declaring void conveyances made in good faith." The doctrine of this case

has been followed and re-affirmed in the following cases: *Kinealy v. St. Louis, K. C. & N. R'y Co.,* 69 Mo. 663; *Martindale v. Kansas City, St. J. & C. B. R. R. Co.,* 60 Mo. 510; *Union Nat. Bank v. Hunt,* 76 Mo. 439; *Shewalter v. Pirner,* 55 Mo. 218; *Land v. Coffman,* 50 Mo. 243. In the case of *Martindale v. Railroad Co.,* it was said by Judge SHERWOOD, speaking for the court, "that the only exception to the rule which prohibits collateral inquiry by a private citizen into the supposed illegal acts of a corporation is when express legislative permission is granted." If the principle announced in these cases needed vindication, it would be abundantly sustained by numerous adjudications of other courts of the highest respectability.

Applying the principle thus declared to the case before us, and the right of plaintiffs to maintain the present proceeding cannot be upheld. The Union Depot Horse Railroad Company had the undoubted power to receive grants of the right of way, and the common council, by virtue of the city charter, the unquestioned power to bestow upon said company the right of way for the purpose of constructing and operating its road on such streets as might be necessary for its operation from the junction of Main and Delaware streets to the Union Depot and thence to the Union Stock Yards in West Kansas City, as far at least as the State line, and if the corporation in accepting the right of way and receiving authority to construct its road on Eighteenth street, passed the exact limits of its power and accepted a right of way over a particular street not necessary for the construction of its road from the junction of Main and Delaware to the Union Depot and Stock Yards, it is for the State alone to interfere for such abuse of its corporate authority.

It is also contended by counsel that the failure of the Union Depot Railroad Company to complete its road on 2. ——: grant of right of way by common council: condition precedent: forfeiture for breach. Eighteenth street within one year after the right of way granted in the ordinance had been accepted by said company, operated

as a forfeiture of the right. This argument is based on section 6 of said ordinance, which is as follows:

Section 6. The said company shall have their road completed over all the streets and parts of streets where they are granted a franchise by this ordinance, within twelve months from the acceptance by said company of the provisions hereof, provided that if they shall be hindered by any legal process or by the city, the time they are so hindered shall not be counted, and in case of failure to have the same completed as aforesaid, or, if they shall willfully violate any other provision of this or the general ordinances of the city, the common council may take away their franchises by a two-thirds vote; provided that said company may contest such declaration of forfeiture in the courts of competent jurisdiction.

The condition contained in the above section being a condition subsequent, the right of way, when accepted by the company, vested at once, subject to be defeated, at the election of the city, by a two-thirds vote of the common council, for a breach of the condition. The forfeiture of the right of way which the city (if not estopped by its acts of acquiescence and encouragement) might have declared on a breach of the condition, cannot be taken advantage of by private parties, it being a matter of contract between the city and the corporation, for the breach of which the city alone can complain. This doctrine is distinctly stated in the cases of *Knight v. Kansas City, St. J. & C. B. R. R. Co.*, 70 Mo. 231, and *A. & P. R. R. Co. v. City of St. Louis*, 66 Mo. 228. In the case last cited the rule laid down in the case of *Brooklyn Central R. R. Co. v. Brooklyn City R. R. Co.*, 32 Barb. 364, was approvingly quoted, it being there said: "If the Central company claim that the common council have the right to annul or impair the grant to the City company for the breach of the condition to complete the work in a given time, it encounters this impediment: The condition to complete within a given time, is one of those distinguished in law as conditions subsequent. The

41—79

effect of a deed with a condition subsequent is to vest the estate in the grantee subject to be defeated by his omission to perform the condition. The omission does not *ipso facto* determine the estate, but exposes it to be determined at the election of the grantor."

It is further insisted that by virtue of section 8 of the amended charter of Kansas City, (Laws 1875, p. 209,) the

3. MUNICIPAL CORPORATION; impairment of contract rights: constitutional law

right of defendant to construct its road on Eighteenth street was taken away, because the consent of the property owners owning a majority in front feet of the property fronting on said street had not been obtained. So much of said section as is material in the consideration of the question raised, is as follows: "Nor shall said city council grant the right of way over or along any street in said city to any street or horse railroad company for the construction of a horse railroad without the consent of the property owners owning a majority in front feet of the property fronting on said street between the points on such street where such road is proposed to be constructed, nor shall any street railway hereafter be constructed or laid down without such consent." Conceding for the argument, without deciding the point, that this section was intended to prohibit the construction of any street railroad, after the passage of the law, on any street without the consent of the property owners along said street, the question then arises, was it within the power of the legislature so to amend the charter as to take away a right which had already vested to construct a street railroad on a street, when no such consent of the property owners was a condition precedent to the vesting of such right. It is conceded that under the charter of Kansas City, as it existed prior to the passage of the act of 1875, *supra*, the common council was fully empowered to grant to any person or corporation the right of way over any of its streets for the purpose of constructing and operating a street railroad, without the consent of the owners of property along said streets. It is also conceded that the com-

mon council passed the ordinance granting to the Union Depot Railroad Company the right of way over all the streets mentioned therein, and it is shown by the record before us that defendant promptly accepted the grant and constructed over three miles of railroad on all the streets mentioned, (at the cost of many thousand dollars,) except on Eighteenth street from the eastern limits of the city west to Main street, and except on Main street from Eighteenth street north to Eleventh street.

Basing our conclusion upon the above facts, we are of the opinion that when the grant of the right of way on said streets was accepted by the said company, and more than three miles of road actually constructed, the right of way on all of said streets became a vested right which could not be impaired or taken away by legislative enactment. *State ex rel. v. Miller*, 66 Mo. 329; *State v. Miller*, 50 Mo. 129. In the above case of *State ex rel. v. Miller, supra*, it was held that public corporations are the auxiliaries of the State in municipal government, and neither their existence nor their privileges rest upon anything like a contract between them and the legislature; but when such a corporation, by authority of the State, contracts with a third person whereby rights become vested in such person, they cannot be divested by the State; such a contract is *pro hac vice* the contract of the State, and if imperfectly made, can be validated by it, and when so validated, cannot be violated by the State.

It is also argued that the Union Depot Horse Railroad Company had no power to mortgage its right of way, and 4. CORPORATION: that, therefore, Dye, who purchased the power to mortgage right of way. right of way at the sale made under the deed of trust or mortgage, could not and did not acquire said right, and that consequently his deed to defendant was inoperative to convey the same to defendant. This position, we think, is answered by section 706, Revised Statutes, which, among other things, provides "that every corporation as such     *     *     has power to hold, purchase,

mortgage or otherwise convey such real and personal estate as the purposes of the corporation may require,    *    * and also to take, hold and convey such other property, real, personal and mixed, as shall be necessary for such corporation to acquire in order to obtain or secure the payment of any indebtedness or liability belonging to the corporation." The right of way acquired over Eighteenth street was an incorporeal hereditament, and, therefore, property, and the right to mortgage it was full and complete under the statute.    The cases to which we have been cited as to the vendibility of a corporate franchise—that is the right to be, have no application to the vendibility of a property right, the sale or mortgage of which is expressly authorized by statute.

Judgment reversed and bill dismissed.   All the judges concur, except Judge HENRY.

In the case of *Bowman v. The Kansas' City Horse Railroad Company,* the same points were decided as in the foregoing case, NORTON, J., delivering the opinion.   Karnes & Ess for appellant; Pratt, Brumback & Ferry and Traber & Gibson for respondent.