## ED. A. HOOK, Appellant, v. C. P. BOWDEN et al., Respondents.

**Springfield Court of Appeals, May 2, 1910.**

1. **MUNICIPAL CORPORATIONS: Use of Streets.** By section 5960, Revised Statutes 1899, cities of the fourth class are given general care and control of the streets with power to protect the citizens from danger, to abate nuisances and to regulate the proper use of the streets.

2. ————: ————: **Telephone Companies.** It has been often held in this State that the placing of telephone poles and stringing wires thereon in a street is a proper use of the street.

3. ————: **Passage of Ordinance: Aye and Nay Vote.** From the minutes of a meeting of the city council at which an ordinance was passed, it appeared that a motion was made that an ordinance be read the third time and put on its passage, then followed the record of the aye and nay vote. *Held*, that the record sufficiently showed that the ordinance was read the third time and duly passed by the city council.

4. ————: ————: ————. The aye and nay vote is not necessary upon a motion to call up an ordinance for a third reading.

5. ————: **Telephone Companies: Franchise Ordinance: Acceptance by Grantee.** Where the grantee of a franchise granting the privilege of installing a telephone system in a city of the fourth class writes upon the ordinance granting the franchise, "Accepted this July 2, 1908," and signs his name; *held*, this is a sufficient compliance with the terms of the ordinance requiring the grantee to file his acceptance with the city clerk or board of aldermen.

6. ———— :————: ————: **Conditions Subsequent: Collateral Attack.** Where a franchise is granted by a city with a time limit which is a condition subsequent, a collateral attack on the validity of such grant cannot be made by private persons; so, where a telephone company fails to install its system within the time fixed by the ordinance, and the ordinance provides that the grant shall be void unless the system is installed and in operation within the time limit, this is a matter of contract between the grantee and the city which the city can waive, and no one but the city can take advantage of this breach of the condition.

7. ———: ———: **Franchises.** The owner of a telephone franchise and exchange in a city sought by injunction to restrain a rival company from installing a new system, the grounds for the injunction being that the new company had forfeited its franchise by failing to install the system within the time fixed by the ordinance. *Held,* that the city only could forfeit the franchise for this failure.

8. **EQUITY: Forfeitures.** A court of equity will not enforce a forfeiture nor interfere in such cases, but will leave a party to his legal remedy.

'Appeal from St. Clair Circuit Court.—*Hon. C. A. Denton,* Judge.

AFFIRMED.

*W. E. Owen* and *John A. Gilbreath* for appellant.

(1) The unauthorized setting of telephone poles and stringing wires and cables thereon is an obstruction of a public highway, and a private person has a right to enjoin such illegal obstruction, if he be damaged thereby differently than is the public at large, not merely in degree but kind. Heer D. G. Co. v. Railway, 41 Mo. App. 63; Gay v. Telephone Co., 12 Mo. App. 493; Cummings v. Ice Co., 156 Mo. App. 32; 3 Pomeroy Eq. Jur., sec. 1349; Wood on Nuisance, sec. 645; Dillon on Mun. Corp. (3 Ed.), secs. 660, 708; Carroll v. Campbell, 108 Mo. 558; Cauble v. Craig, 94 Mo. App. 675; Capital Cy. Ferry Co. v. Trans. Co., 65 Mo. App. 228. (2) The ordinance purporting to grant to C. P. Bowden a right to construct a telephone plant in Appleton City was never legally passed. R. S. 1899, sec. 5955; Water Co. v. Aurora, 129 Mo. 577; Barber Asphalt Co. v. Hunt, 100 Mo. 22; State ex rel. v. Mead, 71 Mo. 266. (3) Where the time limited by ordinance has expired, the board of aldermen cannot by ordinance extend the time for completing the work. Jones v. Paul, 136 Mo. App. 524; Neill v. Gates, 152 Mo. 585; Hund v. Rackliffe, 192 Mo. 312. (4) The consent for a telephone

franchise to Bowden for twenty years could only be evidenced by ordinance duly passed. And it follows as a corollary that this right can only be renewed, revived or extended by act of the city of the same formality and character. Plattsburg v. Tel. Co., 88 Mo. App. 306; California v. Telephone Co., 112 Mo. App. 722; Aurora Water Co. v. Aurora, 129 Mo. 540; Saleno v. Neosho, 127 Mo. 627; Unionville v. Martin, 95 Mo. App. 35; Thompson v. Boonville, 61 Mo. 282; Stewart v. Clinton, 79 Mo. 603; Nevada v. Eddy, 123 Mo. 546; Wheeler v. Poplar Bluffs, 149 Mo. 36; Kolkmeyer v. Jefferson City, 75 Mo. App. 683; Lancaster v. Briggs & Melvin, 118 Mo. App. 570; State ex rel. v. St. Louis, 145 Mo. 551; Mulligan v. Lexington, 126 Mo. App. 720. (5) Defendant's act in setting the pole and doing other work was illegal, done without a contract therefor, and no acquiescence on the part of the city could work an estoppel. 2 Pomeroy Eq. Jur. (3 Ed.), sec. 964; Unionville v. Martin, 95 Mo. App. 37; State v. Murphy, 134 Mo. 67; Heidelberg v. County, 100 Mo. 69; Maupin v. Franklin, 67 Mo. 330; McKissock v. Township, 48 Mo. App. 416. (6) Whether conditions in a contract are precedent or subsequent is to be determined by the intention of the parties as collected from the contract. Finlay v. King, 3 Pet. 346; Patterson v. Camden, 25 Mo. 13; Dobbins v. Edmonds, 18 Mo. App. 307; Sedalia B. Co. v. Water Works, 34 Mo. App. 49; Rose v. Eclipse Co., 60 Mo. App. 28; St. Joseph Union Depot Co. v. Railroad, 131 Mo. 291; Ridge v. Transfer Co., 56 Mo. App. 133; St. Louis v. Gas Light Co., 87 Mo. App. 658; Larimore v. Tyler, 88 Mo. 661; Redlands Orange Growers v. Gorman, 161 Mo. 203; St. Louis Trust Co. v. York, 81 Mo. App. 342; Wall v. Ice Co., 112 Mo. App. 659.

*George H. Daniel* and *Scott & Bowker* for respondents.

(1)   The ordinance granting a franchise to C. P. Bowden in July, 1908, was regularly passed.   Rockville v. Merchant, 60 Mo. App. 365; Water Co. v. Aurora, 129 Mo. 540.   (2)   Where a city council has the power to do a thing by statute, and the statute does not require it to be done by ordinance, it may be done by resolution.   Eichlaub v. City, 113 Mo. 395; State ex rel. v. Milling Co., 156 Mo. 620.   (3)   The condition in the ordinance to Dr. Bowden requiring the work to be completed within six months was a condition subsequent and no one could declare a forfeiture for such reason or take advantage thereof except the city.   Atlantic Ry. Co. v. St. Louis, 66 Mo. 228; Knight v. Railroad, 70 Mo. 231; Hovelman v. Railroad, 79 Mo. 632.   (4) A city can be guilty of estoppel the same as an individual. Union Depot v. St. Louis, 76 Mo. 393; Hovelman v. Railroad, 79 Mo. 632; Stealey v. Kansas City, 179 Mo. 400; Ellis v. Kyger, 90 Mo. 600.   (5)   A city in granting a franchise is merely the agent of the State in doing so and the forfeiture of such franchise cannot be declared by the officers of the city, even, but only in an action of *quo warranto* can such forfeiture be invoked. Kavanaugh v. St. Louis, 119 S. W. 552.

STATEMENT.—This is a contest between two rival telephone companies.   The plaintiff, Ed. A. Hook, a citizen of Appleton City, St. Clair county, Missouri, was the owner at the time of the commencement of this suit of a telephone exchange in said city, furnishing telephone service therein and in the surrounding country.   The right to the system which he was operating was granted to W. D. McComb on February 1, 1901, and purchased from him by plaintiff, and his rights in that system are unquestioned.

Prior to the institution of this suit, the mayor and council of Appleton City by an ordinance, numbered 64, purported to grant to C. P. Bowden and his assigns or successors the right to construct and operate another telephone system in the said city for a period of twenty years. This ordinance was approved July 2, 1908. It contained, among other conditions, the following: "This ordinance and grant shall be void unless the said C. P. Bowden, his successors or assigns, shall have said telephone exchange established and in operation within six months after its passage and ratification by the board of aldermen, and the said grantee filing his acceptance with the city clerk or board of aldermen, which said acceptance shall have the effect of a binding contract between the said city of Appleton City, Missouri, and C. P. Bowden." Then follows: "Accepted this July 2d, 1908. C. P. Bowden." Said franchise would have expired by limitation on the 2d day of January, 1909.

Nothing was done by the respondents towards the construction of the telephone exchange until after the six months had expired, but at a meeting of the board of aldermen held on March 1, 1909, respondents filed the following petition: "I respectfully ask that the time limit of the franchise granted for the erection of the telephone exchange in Appleton City be extended, so that it will expire July 1, 1909. Respectfully, C. P. Bowden."

Prior to the 18th day of April, 1909, the respondent Bowden and his associates purchased telephone poles, and about the 18th day of April, 1909, they commenced the erection of their system, put in a switchboard, some instruments, strung some wires, and at which time they had erected a telephone pole on Fourth street in said city. On the 19th day of April, 1909, the appellant served notice that he would apply for a restraining order to prevent the construction of said telephone plant. On the 20th day of April, an injunction was applied for and granted by the circuit court

of St. Clair county, Missouri. The petition for the injunction stated, among other things, the facts hereinbefore set forth, and that the defendants were about to erect and build a telephone system in Appleton City and establish a switchboard, dig holes in the streets and alleys and set telephone poles therein, and string wires thereon in the various streets and alleys of Appleton City for the purpose of erecting and maintaining a telephone system therein; that "there was no necessity for said telephone system; that the streets and alleys were already occupied with telephone wires and poles by consent of the people of the city, and that if defendants were permitted to erect poles and string wires, it would greatly incommode the public in the use of the streets and alleys in said city and greatly interfere with and injure and damage the plaintiff in the use and operation of his telephone system, and that the unlawful acts of the defendants in erecting said poles would be an irreparable injury to the streets and alleys of said city and damage and interfere with plaintiff's telephone system; that the acts of the defendants were without any authority or consent of the city." Plaintiff prayed that the defendants be enjoined and restrained from erecting, building and placing their wires, poles and other fixtures in said city, and constructing the said telephone system.

As stated, a temporary injunction was granted. Upon a final hearing it was stipulated by the parties (the stipulation to be used as evidence) that the plaintiff, Ed. A. Hook, was a citizen of Appleton City, Missouri, and the owner of real and personal property located therein; that at the time of applying for the injunction, defendants intended to build and construct a telephone exchange and system in Appleton City and operate and run the same; that the defendants are a co-partnership in which their names are truly pleaded; that the system intended to be built by defendants, if constructed, would take from plaintiff a large part of

the patronage enjoyed by him, and to that extent, injure his business; that the defendants intended to place poles and wires along the streets of Appleton City; that Appleton City was a city of the fourth class, organized as such under the laws of the State of Missouri.

Evidence was introduced tending to show that if the defendants' telephone system was constructed, it would probably necessitate the use of taller or shorter poles for the purpose of carrying the construction above or below the competitor, and would take subscribers from one system to the other, necessitate metallic ser-vice instead of ground service to prevent cross talk from one system to the other; that it would also require heavier construction if taller poles were used, and a cable would have to be installed in such a way as not to interfere with the competitor; that it would make the subscribers inaccessible, lessen the receipts, and other disadvantages; that the result upon the value of plaintiff's system would be a depreciation of from twenty-five hundred dollars to five thousand dollars.

Upon this final hearing, the court sustained a motion and discharged the injunction, from which the plaintiff has appealed.

NIXON, P. J.—I. As we have stated, Appleton City was organized under the charter laws governing cities of the fourth class. By section 5957, Revised Statutes 1899, the board of aldermen of such cities have the care, management and control of the city and its finances. It has the power under its general welfare clause to enact and ordain any and all ordinances not repugnant to the Constitution or laws of the State or the United States, and such as they shall deem expedient for the good government of the city, the preservation of peace and good order, and the benefit of trade and commerce. By section 5960, they are given general care and control of the streets with power to protect

144 App—22

the citizens from danger, to abate nuisances, and to regulate the proper use of the streets.

It has been often held in this State that the use of a street in a municipality for the purpose of placing telephone poles and stringing wires thereon is a proper use of the street. [The Julia Building Ass'n v. The Bell Tel. Co., 88 Mo. 258; Schopp v. City of St. Louis, 117 Mo. l. c. 136, 22 S. W. 898.]

Section 1251, Ann. Stats. 1906, in the article on telephone and telegraph companies, provides: "Companies organized under the provisions of this article, for the purpose of constructing and maintaining telephone or magnetic telegraph lines are authorized to set their poles, piers, abutments, wires and other fixtures along, across or under any of the public roads, streets and waters of this State, in such manner as not to incommode the public in the use of said roads, streets and waters: Provided, any telegraph or telephone company desiring to place their wires, poles and other fixtures in any city, they shall first obtain consent from said city through the municipal authorities thereof."

It is claimed by the appellant that the ordinance purporting to grant to C. P. Bowden and his associates a right to  construct and maintain a telephone system in Appleton City was never legally passed in the first instance.  The two particular defects are:

(1) That under section 5955, Revised Statutes 1899, a majority of the members elected to the city council did not vote for the bill upon which said ordinance No. 64 purporting to grant the franchise was based, and that the ayes and nays were not entered as required by said section on the journal.  The journal of the council was introduced  in evidence on this question, containing the proceedings at the time of the purported adoption of the ordinance and shows the following entry: "Regular meeting called to order by the mayor, Mr. Pribble, and all members of the board present.  Minutes of May 4th, May 7th and May 28th were

read and accepted by the board. Motion made by Lutsinger, and seconded by Chapin, that the telephone franchise of C. P. Bowden be read the third time and put on its passage. Vote as follows: Nation, yes; Chapin, yes; Edgerton, yes; Cole, yes; Lutsinger, yes; Woodworth, yes. Six yesses; franchise carried."

(2) That the ordinance was not read the third time.

The special objections raised by appellant to the validity of ordinance No. 64 are without merit. In the case of City of Rockville v. Merchant, 60 Mo. App. 365, the journal of the board of aldermen read as follows: "Ordinance No. 7, concerning butchers and meat wagons, passed to a third reading and put upon its passage," with a recitation that all the members voted yes. It was held that this shows the ordinance was read a third time before final passage. It was also held that the validity of an ordinance will not be questioned because of a mere departure from the forms prescribed for its passage, unless the charter makes such formality vital.

The language of the record in that case is almost identical with the record in the present case; at least in all material respects. The aye and nay vote is not necessary upon a motion to call up an ordinance for a third reading. So the fact that the aye and nay vote was taken and recorded in this case, together with the fact that the clerk recited the passage of the ordinance and the mayor signed and approved it and it was spread upon the record together with the motion all tended to show that the council voted upon the passage of the ordinance, and the fact that at the same time it did so it was read the third time or was not read the third time was immaterial as effecting the validity of the ordinance. This record therefore sufficiently shows that the ordinance in question was read the third time and duly passed by the city council.

II. Section 8 of the ordinance granting the franchise to C. P. Bowden and his associates required that it was to become valid upon the "said grantee filing his acceptance with the city clerk or board of aldermen." C. P. Bowden signed at the bottom of the ordinance in the journal as follows: "Accepted this July 2, 1908. C. P. Bowden." The original ordinance was pasted in the journal with the minutes for June 1, 1908, with other ordinances pending at the time.

We think that the signature as shown on the journal entry was a sufficient compliance with the terms of the ordinance requiring the grantee to file his acceptance with the city clerk or board of aldermen. The statement of these facts and the legal conclusions drawn therefrom show that ordinance No. 64 by which the city undertook to grant to the respondents a telephone franchise was legally enacted and became a contract between the city and the respondents. As has been said, if anything is guarded in the law more particularly than another, it is the inviolability of a contract, and all attempts to impair such obligations under whatever guise that may be made, whether directly or indirectly, should prove abortive. [State ex rel. v. Miller, 66 Mo. 329; State v. Miller, 50 Mo. 129; Hovelman v. K. C. Horse R. Co., 79 Mo. 632.]

III. The question of paramount importance in this case arises from that portion of section 8 of said ordinance No. 64 which is as follows: "This ordinance and grant shall be void unless the said C. P. Bowden, his successor or assigns, shall have said telephone exchange established and in operation within six months after its passage and ratification by the board of aldermen, and the said grantee filing his acceptance with the city clerk or board of aldermen."

It is contended by appellant that this is a condition precedent, that time is of the essence of the franchise contract, and that the ordinance, after the limitation

of the six months therein prescribed for the establishment of the telephone exchange, became null and void, lapsed, and was a dead contract by its very terms; and, that the rights of the parties were the same as though the ordinance had never been passed.

The evidence is uncontradicted that prior to March 1, 1909, no steps had been taken by respondents to erect and establish a telephone system under its franchise. On that date, more than six months after the grant of the franchise, C. P. Bowden presented to the city council the following petition: "I respectfully ask that the time limit of the franchise granted for the erection of the telephone exchange in Appleton City be extended, so that it will expire July 1, 1909. Respectfully, C. P. Bowden." This was spread upon the journal with the minutes of the meeting of said date and was marked with a lead pencil, "Granted." The minutes of said meeting are in part as follows: "Called to order by the Honorable Mayor Pribble, Jr., and the following members were present: Edgerton, Chapin, Dewert and Nation; absent, Cole. Request of C. P. Bowden for continuance of a telephone franchise, July 1st, 1909, was read by Mr. Nation, and the vote stood as follows: Nation, yes; Dewert, yes; Chapin, yes; Edgerton, yes; four yesses and no noes; carried."

The evidence further shows that prior to the 18th day of April, 1909, the respondents had commenced to erect and establish a telephone system under the ordinance; that they purchased a switchboard, poles, wires, and other material of the value of five or six hundred dollars; that immediately prior to the service of the writ of injunction, they erected a telephone pole on Fourth street and were in the act of installing their system in Appleton City. The members of the city council knew that respondents were erecting the poles and were proceeding to establish their system and made no objection to the putting in operation of said system.

It therefore becomes a material question in the determination of the issues in this case whether the provision in the respondents' franchise that the system was to be erected and completed within six months was a condition precedent or a condition subsequent.

In the case of Knight v. K. C., St. J. & C. B. R. Co., 70 Mo. 231, the condition was contained in a city ordinance granting a railroad a right of way over a street, and provided that the grant should become null and void if the company should ever remove its machine shops from said city. It was held that this was a condition subsequent in which no one had any legal interest but the company and the city.

In his commentaries, volume 4, page 439, Chancellor Kent clearly stated the distinction as follows: "Words of limitation mark the period which is to determine the estate; but words of condition render the estate liable to be defeated in the intermediate time if the event expressed in the condition arises before the determination of the estate or completion of the period prescribed by the limitation." Again, "The material distinction between a condition and a limitation consists in this, that a condition does not defeat the estate, although it be broken, until entry by the grantor or his heirs; and when the grantor enters, he is in as of his former estate. Conditions can only be reserved for the benefit of the grantor and his heirs. A stranger cannot take advantage of the breach of them." See, also, Kennett v. Plummer, 28 Mo. 145; Atlantic & Pac. R. Co. v. St. Louis, 66 Mo. 251 and cases there cited; Holden v. Joy, 17 Wall. 251; Knight v. K. C., St. J. & C. B. R. Co., supra.

In the case of Hovelman v. K. C. Horse R. Co., 79 Mo. 632, the common council of a city had granted to a horse railroad company a right of way over certain streets named in the ordinances and it was provided in the ordinances that the road should be completed within twelve months from the acceptance of the grant

by the company, and that in case of failure so to complete it, the council might take away the franchise. It was held that this condition was a condition subsequent, and that the right of way, when accepted by the company, vested at once, subject to be defeated at the election of the city for a breach of the condition. The court say: "The forfeiture of the right of way which the city (if not estopped by its acts or acquiescence and encouragement) might have declared on a breach of the condition, cannot be taken advantage of by private parties, it being a matter of contract between the city and the corporation, for the breach of which the city alone can complain. This doctrine is distinctly stated in the cases of Knight v. K. C., St. J. & C. B. R. Co., supra, and A. & P. R. R. Co. v. St. Louis, 66 Mo. 228. In the case last cited, the rule laid down in the case of Brooklyn Central R. Co. v. Brooklyn City R. Co., 32 Barb. 364, was approvingly quoted, it being there said: 'If the Central Company claim that the common council have the right to annul or impair the grant to the city company for the breach of the condition to complete the work in a given time, it encounters this impediment: The condition to complete within a given time is one of those distinguished in law as conditions subsequent. The effect of a deed with a condition subsequent is to vest the estate in the grantee subject to be defeated by his omission to perform the condition. The omission does not *ipso facto* determine the estate, but exposes it to be determined at the election of the grantor.' "

These authorities and numerous others that might be cited illustrate and emphasize the language of SHERWOOD, J., in the case of The Conn. Mutual Life Ins. Co. v. Smith, 117 Mo. l. c. 289, 22 S. W. 623, that in cases like the present, where a franchise is granted by a city with a time limit which is a condition subsequent, a collateral attack on the validity of such grant cannot be made by private persons: "The settled law of this State as illustrated by frequent instances in this court is that

the capacity of a corporation to take a conveyance of land cannot, after the transfer has reached completion, be called in question in a collateral way, but by the State and not by a private suitor. . . . The only exception to the rule which prohibits collateral attack by private persons on such conveyances or other unauthorized acts of a corporation, is where such attack is authorized by express legislative permission."

It had been further held that in cases of grants of franchises like the present, no person has any legal interest except the city and the contractor. "It was a matter of contract between them, and the city might have waived a compliance with the condition at any time, nor was an ordinance for such purpose necessary. The breach of the condition did not, therefore, *ipso facto*, terminate the right of way, and, as against everyone except the city, the right continued in the company. . . . That no one but the city could take advantage of the breach of the condition on which the right was granted is a doctrine well settled." Knight v. K. C., St. J. & C. B. R. Co., 70 Mo. l. c. 238.

In the case of the present contract with the respondents, the city, instead of taking advantage of the condition, has recognized the continuing validity of the contract, and, by resolution of March 1, 1909, extended its operation and waived thereby any forfeiture of the franchise that had ensued. This fact, together with the actual commencement of the respondents to construct and establish their telephone system under the provisions of their franchise would constitute a waiver of the forfeiture. The condition in the ordinance as to the time in which the system was to be erected could not be collaterally attacked by the appellant in this case under the authorities cited.

Moreover, another insuperable difficulty in this case is that a court of equity cannot enforce a forfeiture and will not interfere in such cases but will leave a party to his legal remedy, if any, even though the

case may be one in which no equitable relief would be given to the defaulting party against the forfeiture. [State ex rel. v. East Fifth Street Ry. Co., 140 Mo. l. c. 551, 41 S. W. 955, and cases cited.] These principles have lately received emphatic recognition by our Supreme Court in the case of Kavanaugh v. St. Louis, 220 Mo. 496, 119 S. W. 552. It was there said: "Courts of equity do not as a rule declare or determine forfeitures."

Nothing in this opinion is taken as deciding as to any rights of appellant to protect the use of his system from injury from cross talk from one system to the other, or otherwise.

The judgment of the trial court is affirmed. All concur.