CITY OF SPRINGFIELD, Respondent, v. ROBBERSON AVENUE RAILROAD COMPANY et al., Defendants; ROBBERSON AVENUE RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, March 9, 1897.

1. Municipal Corporations: CITIES OF THIRD CLASS: RIGHT OF CONTROL OVER STREETS. The right of control over their streets is vested in the municipal corporations of Missouri in respect to public uses as well as to general police power; and the fact that in cities of the third class the council is designated as the corporate agency for the regulation of streets, does not make that body any less the representative of the municipality. (R. S. 1889, sec. 1533.)

2. ———: ———: PUBLIC NUISANCE: RIGHT OF MUNICIPALITY TO RELIEF IN EQUITY. A municipal corporation is entitled to relief in equity against the maintenance of a public nuisance by a street railway company, growing out of its failure to comply with the conditions annexed to the use, by the company, of the streets of the municipality.

*Appeal from the Greene Circuit Court.*—HON. J. T. NEVILLE, Judge.

AFFIRMED; all the judges concurring, Judge BIGGS in the result.

*James R. Vaughan* for appellant.

The title to the streets is not vested in cities of the third class, but in the public, and such cities have no further control over them than that which is expressly conferred by statute. *Hovelman v. R. R.*, 79 Mo. 632, 640.

Under the statute, the authority over streets is not conferred upon cities, but upon their councils. R. S. 1889, secs. 1498, 1574, 1576.

The power of a municipal corporation over its streets, so far as it has any, is governmental and public. *O'Rourke v. Sioux Falls*, 46 Am. Rep. 760; *Goddard v. Inhabitants of Harpswell*, 30 Id. 377; Elliott on Roads and Highways, 563; *Moffet v. Ashville*, 103 N. C. 810. See, also, 2 Dill. Mun. Corp. [4 Ed.], sec. 1217.

Implied powers in this state are such as are necessarily incident to the powers expressly granted, or essential to the declared objects and purposes of the corporation. *Union Depot R'y Co. v. R'y*, 105 Mo. 562; *Knapp v. Kansas City*, 48 Mo. App. 485; *Gaslight Co. v. Mercer, Id.* 644.

Such powers as are conferred upon cities of the third class can only be exercised in the manner provided by law. *Trenton v. Coyle*, 107 Mo. 193.

A city can not enforce its ordinances by suits in equity, nor can franchises be declared forfeited or lapsed by such a procedure. Booth on St. R'ys, sec. 49; *Lejee v. R'y*, 10 Phila. 362; *Wanfren v. Moore*, 34 Wis. 450. See, also, Booth on St. R'ys, secs. 46, 47.

*Quo warranto* is the remedy, and the suit should be in the name of the state. *State ex rel. v. R'y*, 72 Wis. 612; Booth on St. R'ys, *supra*. See, also, *People v. R'y*, 27 Pac. Rep. 673; *People v. Avenue R'y*, 125 N. Y. 573; *People v. Stanford*, 77 Cal. 360; *Draining Co. v. State*, 43 Ind. 236.

*Len Walker*, city attorney, and *R. L. Goode* for respondent.

The respondent is entitled to maintain this action for revocation of the right to occupy the street with the track of appellant for breach of the conditions on which the consent of the city was obtained. *Plymouth v. R'y*, 32 Atl. Rep. 19; *Allegheny v. St. R'y*, 159 Pa. St. 411, 28 Atl. Rep. 202; *Belleville v. Horse R'y*, 38 N. E. Rep. 584; *State ex rel. v. City Cape May*, 34 Atl. Rep. 397; *Mayor, etc., v. R'y*, 19 S. W. Rep. 786; *Detroit v. R'y*, 37 Mich. 558; *R'y v. R'y*, 62 Ill. App. 502; *Waterworks v. State*, 18 S. Rep. 62; *Borough v. Traction Co.*, 3 Pa. Dist. Rep. 751; *Cincinnati v. R'y*, 2 W. L. B. 17; *St. R'y v. Nave*, 38 Kan. 744.

It is a matter with which the state has nothing to do. *People ex rel. v. Gaslight Co.*, 38 Mich. 154; *Hovelman v. Horse R'y*, 79 Mo. 632; *People v. Jackson*, 7 Mich. 432; *St. R'y v. Electric Transit Co.*, 5 Ohio, C. C. 319. See, also, *R'y v. Cape May City*, 34 Atl. Rep. *supra; Belleville v. Horse R'y*, 152 Ill.; *State ex rel. v. R'y*, 85 Mo. 263; *Knight v. R'y*, 71 *Id.* 231; *Bridge v. Bridge*,7 Pick. 344; *Allegheny v. R'y*, 159 Pa. St. 411; *R. R. v. R. R.*, 32 Barb. 364; *Bank v. Dandridge*, 12 Wheat. 70.

The petition states facts clearly charging defendant with the maintenance of a public nuisance, which it is the duty as well as the right of respondent to proceed against. *Dry Goods Co. v. R'y*, 41 Mo. App. 63; *Belton v. Hotel Co.*, 33 S. W. Rep. 680; *Huron v. Bank*, 66 N. W. Rep. 815; *Furniture Co. v. Batesville*, 139 Ind. 77; Beach on Injunc., secs. 1284, 1285.

The power to lay a railway track in a street, can, in this state, in cities of the third class, only be granted by a municipality, and subject to the conditions it prescribes, and when laid or maintained without the authority of the city, or in disregard of the conditions imposed by it, it is a nuisance, and as such may be enjoined by the public authorities, or lot owners injured thereby. R. S. 1889, sec. 1576; Dill. Mun. Corp. [3 Ed.], sec. 708; *Commonwealth v. R. R.*, 14 Gray, 93; *Trenton v. R'y*, 17 Atl. Rep. 483; *Dry Goods Co. v. R'y*, 41 Mo. App., *supra; R. R. v. Shields*, 33 Ga. 601; *Roberts v. Easton*, 19 Ohio St. 78; *Davis v. Mayor*, 14 N. Y. 506; *Oshkosh, etc., R'y*, 43 N. W. Rep. (Wis.) 489; *Milhan v. Sharp*, 27 N. Y. 601; *Jamestown v. R. R.*, 34 N. W. Rep. (Wis.) 728; *Eau Claire v. Matzke*, 56 N. W. Rep. 874; Elliott on Rds. & Sts., 496, and citations.

BOND, J. —The petition in this case is, omitting the formal parts, to wit:

"Plaintiff states that it is a municipal corporation incorporated under the laws of the state of Missouri, as a city of the third class. That it was organized as such corporation at all the dates hereinafter mentioned.

"That under and by virtue of its charter, and the laws of the state of Missouri relating to cities of the third class, it has the sole and exclusive control of its streets and alleys, and has, and always has had the right and power to grant to private persons and corpora-

tions, the right or privilege to maintain and operate street railways along, upon, and across its streets and alleys, and that it has, and always has had the right to make the grant of such rights and privileges subject to such reasonable and legal terms and conditions as it, or the city council, may deem proper.

"That Walnut street extends from the eastern to the western limits of said city, and was at all times hereinafter mentioned, a public street under the exclusive control of plaintiff.

"That in pursuance of the rights and powers, under and by virtue of its charter and the laws of the state of Missouri, plaintiff did, through its city council, on the fourth day of December, 1889, duly and legally enact ordinance number 1207, entitled, 'An ordinance authorizing Martin J. Hubble, his associates and assigns, to construct, operate, and maintain a horse street railway, within the city of Springfield, Missouri,' which ordinance was approved by the mayor and said city council, and duly published and did become a law.

"That on the twenty-sixth day of February, 1890, plaintiff, through its city council, duly and legally enacted ordinance number 1251, entitled, 'An ordinance authorizing Martin J. Hubble, and his associates and assigns, to construct, equip, operate, and maintain a horse street railway within the limits of the city of Springfield,' which said ordinance was approved by the mayor of the city of Springfield, duly and legally published, and did become a law.

"That by the terms of said ordinances number 1207 and number 1251, plaintiff granted to Martin J. Hubble, his associates and assigns, for the period of thirty (30) years, the right to construct, equip, operate, and maintain a single track horse street railway from the intersection of Walnut street and South street along said Walnut street, west, to the intersection of

Walnut street and Fort street, and from the intersection of Walnut and South streets along said Walnut street east to the intersection of said Walnut street and the eastern limits of the city.

"That among other terms and conditions contained and expressed in said ordinances, is the following, as appears in section 6 of both ordinances: 'The said Martin J. Hubble, his associates or assigns, shall keep the streets and alleys between the rails, and for a space of twenty-four (24) inches outside of each rail in good condition and repair and if the said city shall at any time cause the street and alleys on both sides of the track to be paved, macadamized or otherwise improved, the said company shall pave, macadamize and improve the space between and on the outside of its rails for a space of twenty-four (24) inches, in the same manner; and the company shall in all things be subject to all conditions and requirements imposed upon it.'

"That section 9 of each ordinance above referred to, provides as follows: 'Said company, its successors or assigns, shall run cars each way, daily, over the entire line of said street railway, between the hours of 6 o'clock A. M. and 7 o'clock P. M., at least every fifteen minutes, and between the hours of 7 o'clock P. M. and 11 o'clock P. M. every thirty minutes.'

"That said ordinances number 1207 and 1251, and all the terms and conditions thereof, were duly accepted in writing by said Martin J. Hubble, grantee therein, within the time provided by said ordinances, for their acceptance.

"That the defendant, The Robberson Avenue Railway Company, has become, by assignment, and now is, the owner of all the privileges and rights granted by the aforesaid ordinances to said Martin J. Hubble, his associates and assigns.

"That the Mississippi Valley Trust Company and the Fourth National Bank of St. Louis, Missouri, have some interest in said street railway and are necessary parties to the suit for a final determination thereof. That L. H. Murray has some interest in said street railway and is a necessary party to this suit for a final determination thereof.

"That plaintiff has since the passage of said ordinances and the acceptance of said ordinances, by the said Martin J. Hubble, caused said Walnut street, between the eastern limits of the city and Fort street, to be paved with first-class brick pavement, and from the curb line to within twenty-four inches of the rails on each side of said Robberson Avenue Railway Company's track.

"That said company has caused the space of twenty-four (24) inches, immediately outside of its rails to be paved in the same manner as the city has caused the remainder of the city to be paved, as required by section 6 of said ordinance above mentioned, but has wholly failed, though often notified and requested by the city council of said city so to do, to pave the space between the rails in the same manner, or to so pave any part thereof.

"That said portion of Walnut street, lying between and within the rails of said track, from the eastern limits of said city to Fort street, now remains unpaved to the great detriment and annoyance of the inhabitants of the city residing along and upon said street, also to the annoyance of the general public.

"That by reason of said portion of said street remaining unpaved as aforesaid, the pavement of the remainder of said street is being constantly undermined and injured by water percolating through the said unpaved space.

"Plaintiff further states that defendant has violated the conditions upon which said franchise was granted, by failing to run its cars along its line on Walnut street according to the schedule as provided in section 9 of each of the ordinances above mentioned, which requires that defendant shall run cars each way over the entire line, between the hours of 6 o'clock A. M. and 7 P. M. at least every fifteen minutes, and between the hours of 7 o'clock P. M. and 11 o'clock P. M. at least every thirty minutes.

"That on the twentieth day of July, 1894, and for a long time prior thereto, defendant continually and persistently violated the conditions upon which said franchise was granted, by failing to run its cars as required by ordinance number 1207 and number 1251.

"That from the twenty-fourth day of July, 1894, until the filing of this suit, the said company has wholly failed to run any cars on its line on Walnut street and that said company is not now, to any extent, operating said road.

"That the space between said company's track, on account of not being paved, as required by the ordinance granting the franchise to said company, causes dirt and rubbish to accumulate along the center of said Walnut street, creating numerous mudholes.

"That said unused track and the unpaved space between the rails, in the condition in which it is now permitted to remain by said company, has the appearance, and in fact is, a long muddy ditch in the center of said Walnut street from the eastern limits of the city to Fort street, all of which mars the beauty of one of the finest streets in the city, makes it inconvenient for traveling on said street and is detrimental to the interest of property holders and residents along said street, and is a great annoyance to the public generally.

"That all of said inconvenience and annoyance and injury to said street is caused by the failure of said Robberson Avenue Railway Company to comply with the conditions required in said ordinances numbers 1207 and 1251.

"Wherefore in consideration of the premises plaintiffs pray the court to declare said grant contained in said ordinances, and all agreements and contracts on the part of plaintiff contained therein, null and void and of no effect, on account of the aforesaid conditions and to declare all rights and privileges acquired by defendants or their assigns, under said ordinances, forfeited and void."

Defendant demurred to the petition, claiming that it showed no right in plaintiff to sue, and failed to state a cause of action. This demurrer was overruled. Defendant declining to plead further and electing to stand on its demurrer, judgment was rendered in favor of plaintiff. Defendant appealed.

In support of its first cause of demurrer, defendant insists that this suit should have been brought by the state, through the attorney general, and not by the city of Springfield. This position is untenable. MUNICIPAL corporations: cities of third class: right of control over streets. The control of their streets in respect to public uses, as well as general police power, is vested in the municipal corporations of this state. *State ex rel. Murphy*, 130 Mo. *loc. cit.* 22; sec. 20, art. 12, Constitution of Missouri; *The Julia Bld'g Ass'n v. Bell Telephone Co.*, 88 Mo. 258–268. The fact that in cities of the third class the council is designated as the corporate agency for the regulation of streets (R. S. 1576), does not make that body any less the representative of the municipality, of which it is a constituent part, and on whose behalf and in whose name all of its powers are exercised. R. S. 1889, sec. 1533. All corporations, municipal or other-

wise, must act through and by their agents. A corporation, owing to its artificial nature, can not act otherwise. In municipalities of every grade the control and regulation of streets is made the duty of its council or other legislative body. But such charge does not, of course, imply that the corporation is not a party, principal, to the acts and doings of its agency. Hence we can not concur in the argument of the learned counsel for appellant that the councils of cities of the third class act independently of the municipality and as the direct representatives of the state.

That the city of Springfield, through its council, could enact the ordinances recited in the petition and impose the conditions therein set forth to the enjoyment of the rights granted, can not be seriously questioned. That it could also resume rights granted in the ordinances upon non compliance with such conditions by the grantees or their successors, is clear under the decisions in this state. *Knight v. R'y*, 70 Mo. 231; *Hovelman v. R'y*, 79 Mo. 632. In so doing it would only be acting within the limits of its delegated power of control over special uses of its streets. As to such uses it may attach conditions necessary to protect itself from pecuniary liability and to secure the health and welfare of its citizens. Failing to do this, the city would be liable primarily for all injuries occasioned by the misuse of its streets. *Blake v. City of St. Louis*, 40 Mo. 570; *Norton v. R'y*, 97 Mo. 537; *Walker v. City of Kansas*, 99 Mo. 652. The only conclusion to be drawn from these premises is, that the city of Springfield being the grantor of the rights of defendant to use its streets under the contract and conditions expressed in said ordinances, and pecuniarily interested in the observance of such conditions, was the proper party to sue for their breach. Again, the petition in this case shows the existence of a dangerous and con-

tinuing nuisance growing out of the failure of defendant to comply with the conditions affixed to its use of the street. The city of Springfield is clearly entitled to apply to a court of equity for relief in such a case, and the demurrer only questioning its right to sue and the insufficiency of the statement of a cause of action, was properly overruled, upon the well settled principle that such general objections are not available against a petition, if it shows any cause of action in the plaintiff. The judgment will therefore be affirmed. All concur; Judge BIGGS in the result.

*Public nuisance; right of municipality to relief in equity.*